MICHAEL J. LEAHY & others *vs.* INSPECTOR OF BUILDINGS OF NEW BEDFORD.

Bristol. October 28, 1940. — January 22, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Zoning.*

A city council had no power to amend a zoning ordinance by singling out one lot and zoning it as a business district, where the lot was located in what was essentially a residential district and was zoned as such and was not located near the border of that district, even if such lot was practically useless for residential purposes and probably could be used profitably for business purposes.

PETITION, filed in the Supreme Judicial Court for the county of Bristol on February 18, 1938, for a writ of mandamus.

The case was heard by Cox, J.

A. P. Doyle, (F. Vera with him,) for the respondent.

T. M. Quinn, for the petitioners.

RONAN, J. The petitioners seek a writ of mandamus to require the respondent, the building inspector, to enforce the zoning ordinance of New Bedford as it was before it was amended on April 8, 1937, whereby a parcel of land located on the corner of County and Mill streets and owned by one Epstein was changed from a residential to a business district, and to revoke the building permit issued by the respondent for the construction upon said parcel of a building to be used for commercial purposes. The case was heard upon an auditor's report including certain maps which were put in evidence before the auditor. The single justice found the facts as stated by the auditor, and found and ruled that the amendment to the zoning ordinance was invalid in that it was not the same for zones, districts or streets having substantially the same character. He ordered the writ to issue. The case is here on exceptions of both parties to the action taken upon their requests for rulings.

The city had enacted a zoning ordinance in 1926 by which the city was divided into residential, business and industrial districts, and the height, area and use of structures in these districts were regulated. There were three grades of residential districts known as "A," "B" and "C." The Epstein lot was in a residence "A" district. On September 13, 1929, the zoning ordinance was amended, and this lot, together with the adjoining lot abutting on County Street and extending to North Street, was changed from a residence "A" district to a residence "C" district. This changed the locus from one that was in the main an area for single family dwellings to one where dwellings accommodating three or more families were permitted. Thereafter, Epstein filed a petition in the Land Court, G. L. (Ter. Ed.) c. 185, § 1, as amended by St. 1934, c. 263, § 1, to determine the validity of the ordinance, claiming he was aggrieved in not having his land included in a business district. The Land Court by a decision rendered on March 29, 1935, dismissed the petition.

When Epstein purchased this property in 1924 there was a one-family dwelling on the lot. After the 1929 amend-

ment, Epstein moved this house to the rear of the lot, turned the house around to face Mill Street and changed it into a structure to accommodate four families. This left vacant the land at the corner of County and Mill streets. In February, 1937, Epstein petitioned the city council to change this vacant land from a residence "C" district to a business district, the land measuring about ninety-six feet on County Street and one hundred twenty feet on Mill Street. The planning board, to whom the petition was referred, held a public hearing and reported to the city council recommending that no change be made in the zoning map as the granting of the petition "would constitute spot zoning and would be detrimental to the best interests of the city." The committee on ordinances held a public hearing and voted to recommend the granting of the petition. On April 8, 1937, the amendment to the ordinance was passed unanimously by the city council and the board of aldermen, and became effective upon the failure of the mayor to approve or disapprove it within ten days after it had been presented to him. The building inspector has issued to Epstein a permit for the construction of a store upon this corner lot and Epstein intends, unless the permit is revoked, to build such a structure.

County Street is one of the main thoroughfares of the city, running north and south, and for several blocks north of Mill Street both sides of the street are included in residential districts. This portion of the street has been for years a fine residential section. The original ordinance was adopted in 1926 to continue the residential atmosphere of the street as it then existed. Both sides of County Street south of the intersection of Mill Street for one half a street block is zoned for residences and then, as one proceeds southerly, both sides of the street are included in business districts. There is a most decided trend toward business in that portion of County Street, but no new business has been located on County Street for a mile or more north of the street south of Mill Street during the last twelve years. Mill Street crosses County Street and runs east and west. A large amount of traffic passes over this

street between the western part of the city and Cape Cod. Both sides of Mill Street west of County Street are in residential districts. There is no demand for residential property on County Street. The Epstein lot is practically useless for residential purposes, but in all probability it can be used profitably for business. The auditor found that the zoning for business comes to a complete stop one half a block south of Mill Street and that if the ordinance as amended is valid it will be the first encroachment of business into what was designated and has remained a residential area, and he, therefore, found that the ordinance as amended, if valid, is not the same for zones, districts or streets having substantially the same character.

The General Court was empowered by art. 60 of the Amendments to the Constitution of this Commonwealth "to limit buildings according to their use or construction to specified districts of cities and towns." The Legislature could itself exercise this power and establish such districts in any city or town, as it did in the case of the city of Boston, St. 1924, c. 488, *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, or it could delegate the power to create such local districts to the legislative branch of a city government and to the voters of a town. *Spector* v. *Building Inspector of Milton,* 250 Mass. 63. But the Legislature could determine the extent of the power granted to these municipalities and prescribe the terms and conditions under which it could be exercised, and action taken beyond the authority conferred or not in compliance with the terms and conditions governing its exercise would be invalid. *Newton* v. *Belger,* 143 Mass. 598. *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464. *Commonwealth* v. *Hayden,* 211 Mass. 296. *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64. *Tranfaglia* v. *Building Commissioner of Winchester,* 306 Mass. 495.

The authority of the city of New Bedford to establish and maintain zoning districts is measured by the statutory provisions which in their present form appear as G. L. (Ter. Ed.) c. 40, §§ 25–30B, inserted by St. 1933, c. 269; St. 1935, c. 388; St. 1938, c. 133. The power

is not unlimited. The enabling statute, which is a regulation of the use of structures and land under the police power, expressly recognizes its inherent limitations by authorizing cities to adopt ordinances regulating and restricting the height and size of buildings, the size and width of the lots, the percentage of the lot that may be occupied, and the location and use of buildings and land for trade, industry and residence, if such ordinances are "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants." G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. This last mentioned statute provides that such regulations shall be designed for certain enumerated purposes and the ordinances "established hereunder in any city or town shall be the same for zones, districts or streets having substantially the same character." The validity of the amended ordinance must be tested by the terms of the enabling statute.

In the first place, there is nothing contained in the report of the auditor that shows that the amendment was passed to accomplish any of the enumerated purposes set forth in the statute, although some of these purposes are expressed in such general and broad terms that it ought to be comparatively easy to demonstrate that an ordinance that purports to promote the public welfare by changing the zoning regulations serves at least one of these designated purposes. *Burke* v. *Metropolitan District Commission*, 262 Mass. 70. *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230. *Stockus* v. *Boston Housing Authority*, 304 Mass. 507.

The establishment of zoning districts is based upon the physical characteristics of substantial areas and their suitability for use for certain purposes in view of the present and future requirements of the public health, morals, safety and general welfare. *Wilbur* v. *Newton*, 302 Mass. 38. *Zahn* v. *Board of Public Works*, 274 U. S. 325.

A city council is empowered to amend a zoning ordinance when the character and use of a district or the surrounding territory have become so changed since the original ordinance was enacted that the public health, morals, safety and wel-

fare would be promoted if a change were made in the boundaries or in the regulations prescribed for certain districts; but mere economic gain to the owner of a comparatively small area is not sufficient cause to invoke an exercise of this amending power for the benefit of such owner. *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160. *Prusik* v. *Board of Appeal of Boston,* 262 Mass. 451. *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97. *Coleman* v. *Board of Appeal of Boston,* 281 Mass. 112. *Phillips* v. *Board of Appeals of Springfield,* 286 Mass. 469. It is true that these decisions deal with the actions of administrative boards in granting variances in the applications of zoning ordinances, and that there is a difference between the variance in the application of an ordinance and in the enactment of an ordinance, yet they are significant in illustrating the permanence that is ordinarily to be attributed to existing ordinances. That feature of zoning ordinances and by-laws is emphasized by the statutory requirements which must be complied with in order to affect existing regulations. G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1933, c. 269, § 1. *Lexington* v. *Bean,* 272 Mass. 547. *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64. *Wilbur* v. *Newton,* 302 Mass. 38.

The petitioners contend that the action of the city council in establishing as a business district a single corner lot located in what is essentially a residential district is arbitrary and unreasonable and, consequently, is invalid. There are decisions to this effect. *Strain* v. *Mims,* 123 Conn. 275. *Michigan-Lake Building Corp.* v. *Hamilton,* 340 Ill. 284. *Mueller* v. *C. Hoffmeister Undertaking & Livery Co.* 343 Mo. 430. *Linden Methodist Episcopal Church* v. *Linden,* 113 N. J. L. 188. *Higbee* v. *Chicago, Burlington & Quincy Railroad,* 235 Wis. 91.

The auditor found that the operation of the amendment will not result in uniformity of regulations and restrictions for zones, districts or streets having substantially the same character. That finding was warranted, if not required, by the various subsidiary findings and especially those that set forth to a considerable extent and in much detail the

character and use of the various properties in the vicinity of the Epstein lot. The Epstein lot has never been used for business. No business area is any nearer to this lot than it was when the zoning ordinance was first enacted. It remains in a long established residential district where no substantial changes in its character or use have occurred since the zoning ordinance first became effective. The lot in question is not on the edge of a residential district for it is surrounded on all sides by districts zoned for residences. The effect of the amendment is to single out one lot located within what is essentially a residential district and impose restrictions upon this lot that are less onerous than those imposed upon the remaining portions of what is really the same zoning district. G. L. (Ter. Ed.) c. 40, §§ 25, 27, as so appearing, prohibit an amendment of the ordinance that accomplishes such a result, and as the amendment was unauthorized by these statutes, it cannot be sustained. *Newton* v. *Belger,* 143 Mass. 598. *Commonwealth* v. *McGann,* 213 Mass. 213. *Kilgour* v. *Gratto,* 224 Mass. 78. *Commonwealth* v. *Badger,* 243 Mass. 137. *Tranfaglia* v. *Building Commissioner of Winchester,* 306 Mass. 495.

*Petitioners' exceptions overruled.*
*Respondent's exceptions overruled.*