J. NEWTON SMITH & others *vs.* BOARD OF APPEALS OF SALEM.

Essex.   December 9, 1942. — April 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Zoning.*

An amendment of a zoning ordinance establishing a small portion of a general residence district of long standing as a new district called a funeral home district was unreasonable and capricious and beyond the power conferred by G. L. (Ter. Ed.) c. 40, § 25, as inserted by St. 1933, c. 269, § 1, where it appeared that the establishment of the new district would not result in uniformity of regulations and restrictions for districts having substantially the same character, although a funeral home in the new district would be a convenience because it was near a church and the new district bordered at one side on a narrow business district.

APPEAL, filed in the Superior Court on May 27, 1942.

The case was heard by *Morton,* J.

*J. Kinsella,* City Solicitor, for the respondent, submitted a brief.

*R. H. Wiswall,* (*G. T. O'Hara & R. W. Reardon* with him,) for the petitioners.

QUA, J.   This is an appeal to the Superior Court under G. L. (Ter. Ed.) c. 40, § 30, as inserted by St. 1933, c. 269, § 1, and subsequently amended, from a decision of the board of appeals of Salem affirming the action of the inspector of buildings in granting to one Murphy a permit for alterations to a residence owned by him at the northeasterly corner of Federal and Flint streets to adapt it for use as a funeral home.   The parties objecting to the permit are landowners in the immediate vicinity.   The Superior Court, deciding in their favor, annulled the decision of the board

of appeals and invalidated the permit.  The case is here on appeal by the board of appeals.  The evidence is reported.

The case turns upon the validity of an amendment to the zoning ordinance of the city adopted at the instance of Murphy in March, 1942.  Before the amendment the zoning ordinance had established seven classes of districts known as "single residence districts," "general residence districts," "apartment house districts," "semi-residence districts," "business districts," "industrial districts," and "unrestricted districts," and a large area in the older residential section of the city, including both sides of both Federal and Flint streets at and near their intersection, had been placed in a general residence district.  The amendment purports to add an eighth class of districts, known as "funeral home districts" and to erect into such a district a strip of land sixty-seven feet in width on the easterly side of Flint Street, beginning at Federal Street and extending northerly until it comes into contact with a narrow business district bordering Bridge Street.  The portion of the new district next to Federal Street is practically coextensive with the Murphy lot, but the district also includes a small lot on Flint Street in the rear of Murphy's lot.  All of the area surrounding the new district, except the business strip at its northerly end, continues in the original general residence district.  The only difference between a funeral home district and a general residence district is that funeral homes are permitted in the former and are excluded from the latter.

The trial judge justifiably found these facts: The new funeral home district "was largely, if not wholly, for the sole benefit of said Murphy," although the location of Murphy's funeral home in his house would be more convenient to a large number of persons than its present location elsewhere.  Murphy's house is in a fine residential district that has not changed its character in any substantial particular since it was zoned as a general residence district in 1926.  The establishment of the new district would not promote the public health, morals, safety, welfare or convenience.  It would not result in uniformity of

regulations and restrictions for zones, districts, or streets having substantially the same character. The effect of the amendment would be "to single out one lot located within what is essentially a residential district and to impose restrictions upon this lot that are less onerous than those imposed upon the remaining portions of what is really the same zoning district."

It is plain that the Legislature in authorizing cities and towns to establish districts or zones for regulating the character of buildings and the use of buildings and lands for the purposes set forth in G. L. (Ter. Ed.) c. 40, § 25, as inserted by St. 1933, c. 269, § 1, intended to provide for the creation and maintenance of reasonable uniformity within districts having in fact the same general characteristics. It was not intended that one or two building lots essentially similar to the rest of the neighborhood by which they were surrounded could be marked off into a separate district or zone and benefited by peculiar advantages or subjected to peculiar burdens not applicable to adjoining similar lands. To say the least, very unusual conditions not present in this case would be required to justify such discrimination. Often it may be difficult to draw the line between neighborhoods that should be devoted to different uses, and where there is room for reasonable doubt the judgment of the local authorities must prevail. *Simon* v. *Needham,* 311 Mass. 560, 564. But in this instance there is no room for reasonable doubt. However desirable it may have seemed that Murphy should have a funeral home at the particular site in question, the creation of the new district, if the language and the expressed design of the enabling act are held clearly in mind, is seen to be unreasonable and capricious and beyond the power conferred.

The amendment is not saved by the facts that a funeral home at the new location would be near a church and would be a convenience to a large number of persons. Almost any business anywhere would for one reason or another be convenient to numbers of persons. Nor is the amendment saved by the fact that the new sixty-seven foot funeral

home district is in contact at its northerly end with a business district.

This is a plain case of what has come to be called "spot zoning," a subject so recently and fully discussed in the case of *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128, that further discussion here is unnecessary. *Whittemore* v. *Building Inspector of Falmouth, ante,* 248.

We need not consider whether the amendment is invalid for the further reason that it creates a district or zone for a single occupation.

*Decree affirmed.*