## MORRIS v. FULCHER.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
   —WAIVER OF DISQUALIFICATION.

   Disqualification of defendant as a witness by reason of statute
   barring testimony of an opposite party as to matters equally
   within knowledge of deceased, whose executor and heir claimed
   money held by defendant, *held*, waived by plaintiffs, where
   they had examined defendant on matters equally within the
   knowledge of deceased as to the ownership of funds in dispute
   (CL 1948, § 617.65).

2. ESTATES OF DECEDENTS—ACCOUNTING—PARTIES PLAINTIFF.

   The residuary devisee and legatee of a decedent has no strict
   right, as such, to maintain a bill of complaint for accounting
   on behalf of the decedent's estate, without the acquiescence
   and support of the executor.

3. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
   —WAIVER OF DISQUALIFICATION BY EXAMINATION.

   The examination of an opposite party by the legal representative
   of a decedent's estate is a waiver of the statute barring tes-
   timony of an opposite party as to matters equally within the
   knowledge of the deceased to the extent of the matters on
   which the opposite party was examined (CL 1948, § 617.65).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—WAIVER—BANK DE-
   POSITS.

   Niece of defendant sister-in-law of plaintiff's decedent, who
   appeared by attorney after suit for accounting had been fully
   heard and submitted and after her aunt had died, *held*, to
   have waived any right to object to Supreme Court's determina-
   tion of matters litigated in the lower court involving bank
   deposits made by aunt in joint names of herself and niece.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 58 Am Jur, Witnesses § 358.
[1, 3] Examination of witness as waiver of his incompetency to
   testify as to transactions or conversations of decedent. 64
   ALR 1149; 107 ALR 483; 159 ALR 411.
[2] 21 Am Jur, Executors § 506.

5. BANKS AND BANKING—JOINT DEPOSITS—CONVERTED FUNDS.

Deposits in 2 defendant banks, made by aunt in name of herself and niece, from funds rightfully or wrongfully in aunt's control are ordered paid to estate of aunt or the niece as to be later determined insofar as it is shown funds are those which had belonged to aunt and balance of deposits to estate of person from which the funds were claimed to have been taken by the aunt, each payment to be with bank interest.

6. COSTS—FAILURE TO PREVAIL IN FULL.

No costs are allowed in suit for accounting, where neither party had prevailed in full, although plaintiff has been awarded on appeal a substantial amount in addition to that allowed by the trial court.

Appeal from Shiawassee; Lyons (Willis L.), J. Submitted April 14, 1954. (Docket No. 53, Calendar No. 46,078.) Decided July 6, 1954. Amended opinion filed on rehearing October 14, 1954.

Bill by Wayne Morris, heir-at-law of Charles S. Morris, deceased, against Lucy S. Fulcher and others, to reach funds claimed as assets of estate. Ellis J. Bowler, executor of estate, originally joined as party defendant, continued as party plaintiff. Principal defendant Fulcher died after hearing and prior to decree, and case continued against and by her estate. Decree for plaintiffs giving partial relief. Plaintiffs appeal. Defendants cross-appeal. Modified and plaintiffs given additional relief.

*Milton G. Schancupp,* for plaintiff Morris.

*Ellis J. Bowler,* for plaintiff Charles S. Morris estate.

*Gerald J. McClear,* for defendants Lucy S. Fulcher estate and Iva S. Wright.

REID, J. Plaintiff Wayne Morris filed his bill of complaint against Lucy S. Fulcher, sister-in-law of

his deceased father, Charles S. Morris, and others. The principal object of the bill was to require Mrs. Fulcher to account to the executor of the estate of Charles S. Morris, deceased, for moneys belonging to the estate and converted to her use by Mrs. Fulcher. The executor of the estate, Ellis J. Bowler, was made a party defendant. Also defendants are 2 banks in which Mrs. Fulcher deposited moneys claimed by plaintiff to have been taken by her from the safe that belonged to his deceased father, Charles S. Morris. The decree of the trial court found that Mrs. Fulcher had unlawfully and without authority, removed currency from the safe of Charles S. Morris in his residence and converted the moneys, in part, to her own use.

Of $17,500 currency that Mrs. Fulcher deposited in defendant banks shortly after the death of decedent, the trial judge found that $7,610 was the property of the estate of Charles S. Morris, deceased, and that the remainder of the deposits with interest belonged to Lucy S. Fulcher (now deceased). Plaintiff Wayne Morris and Ellis J. Bowler, the executor of the estate of Charles S. Morris, jointly appealed from the decree of the court, claiming in effect that the entire deposits of $17,500 plus $110 was the property of Charles S. Morris, and further, that Lucy S. Fulcher also removed and converted $940 from the pocketbook of Charles S. Morris unlawfully and without authority, and further claim that the court was in error in adjudicating that $10,000 of the deposits made by Mrs. Fulcher in the 2 banks was the property of Mrs. Fulcher.

The defendant Lucy S. Fulcher died before the entry of the final decree in the lower court. The executor of her estate cross-appeals, claiming that the plaintiff's bill should have been dismissed, and that the decree of the trial court awarding to plain-

tiff $7,610 of the money deposited by Mrs. Fulcher was erroneous.

Charles S. Morris, deceased, had a son, plaintiff Wayne Morris, the sole residuary devisee and legatee under his will. After a divorce and in 1916, deceased married Jennie Bennett, whose sister Lucy S. Fulcher, the defendant in this case, came to live with them, Charles S. Morris and wife, and lived in their house continuously until after the death of Charles S. Morris. Mrs. Charles S. Morris died on January 25, 1950. Mrs. Fulcher continued to live in the same house and was housekeeper for Charles S. Morris, deceased, until he died about 9 months later, October 2, 1950.

Charles S. Morris had been in the undertaking business for several years and about November 1, 1945, sold his funeral business for $10,000 to Ford Anthony, who succeeded in the undertaking business and who is now also the administrator of the estate of Lucy Fulcher. The real estate of Charles S. Morris was appraised at $44,000, personal property at $9,571.56. The inventory does not include the $17,500 claimed to have been abstracted by Lucy Fulcher from Mr. Morris' safe.

It is the claim of the plaintiff that upon Mr. Morris being stricken with his final illness and removed practically unconscious to the hospital, Mrs. Fulcher then being remaining in sole charge of the house, took from his safe, $17,500 and from a pocketbook in his clothes, $940.

On or about December 27, 1950, Mrs. Fulcher deposited in the names of herself and niece with the Shiawassee County Bank of Durand, Michigan, $7,500. It was all in rolls tied up with string, $1,000 in each bundle excepting one. It was all in $10 and $20 bills with the exception of possibly two $5 bills and one $50 bill.

On January 2, 1951, Mrs. Fulcher deposited in the names of herself and niece, $10,000 in the Vernon

State Bank. The money was rolled up and had strings and rubber bands around it, the bills were in denominations of a few 5's, 10's, mostly 20's and a few 50's. She actually brought to this bank for deposit $10,110 which was $110 more than she supposed was contained in the rolls of bills she brought there. On being informed of this by the bank teller, she retained the extra $110.

The niece disclaims all knowledge of the making of the deposits.

Mrs. Fulcher testified that the moneys she deposited in these 2 banks were all her own moneys. She claimed that she had this $17,500 hidden in the Charles Morris house, hidden "up in our bathroom behind the bathtub in a deep drawer and long drawer which shoved in back in under the attic steps." The tin box in which she said she kept the bills was 9–3/4 inches long, 5 inches wide and 2–1/2 inches deep. However, there seems to be no dispute about the testimony of witness Dickey in this particular, that the box could not have contained the amount of $17,500 of money in the denominations described by the tellers of the 2 banks that received it from Mrs. Fulcher, so that her testimony that she had the $17,-500 in the tin box from 1940 until the death of Mr. Morris cannot be accepted as being true.

Mrs. Fulcher testified:

"From 1928 when I got married I had the same sum of money, $5,000 to $10,000. I had that in my possession all the time. As to whether it was the same money I deposited in the bank after Mr. Morris died I suppose it was or part of it anyway was, I wouldn't say it was all that or not."

The testimony is undisputed in this case that in 1928 the bills issued by the United States government as currency were larger than they have been since 1930. None of the large, old-fashioned bills were included in the deposit in either of the banks. All the bills deposited by Mrs. Fulcher in the banks

were of the smaller, newer size, so that her testimony that part of the money she deposited in the bank was bills that she had in her possession since 1928 is incorrect and cannot be accepted as being true.

About the time of the death of Charles S. Morris, Mrs. Fulcher made statements that she did not know how to open the safe and was unable to explain how the safe could be opened. However, it appears from the testimony of Mr. McDivitt that about December 18th following the death of Charles Morris, Mrs. Fulcher called him there to open the safe because it was "stuck shut." There was nothing wrong with the combination and the trouble was that a cloth which had been put over the top of the safe had been caught in the door, crowding the door and making it hard to open. Mr. McDivitt further testified Mrs. Fulcher said she was looking in the safe and someone knocked on the door and she shut the safe and "threw the combination." The cloth was then caught in the door.

It otherwise further appears that Mrs. Fulcher prior to Mr. Morris' death had access to the safe. Therefore her testimony that she did not know how to open it was incorrect and not worthy of belief.

The executor of the will of Lucy S. Fulcher, appellant, claims that Mrs. Fulcher was given $6,000 by Mr. Morris, deceased. Wayne Morris, plaintiff, and Ellis J. Bowler, the executor of the estate of Charles Morris, now joined as plaintiff, claim that her testimony in that regard is barred by the statute.

Our statute, CL 1948, § 617.65 (Stat Ann § 27.914), is, in part, as follows:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own

behalf, shall not be admitted to testify at all as to matters which, if true, must have been equally within the knowledge of such deceased person."

The trial court in reliance upon this statute incorporated in its final decree the following:

"It appears to the court that her [Lucy S. Fulcher's] testimony in that respect [*i.e.*, claimed gift of $6,000 to her by deceased] cannot be considered for the reason that she is testifying as an opposite party to matters equally within the knowledge of the deceased."

The court was in error in ruling that her testimony was forbidden under the statute. Her disqualification had been waived, by both the estate represented by Mr. Bowler, executor, and by the plaintiff Wayne Morris, the sole residuary devisee and legatee, acting by his attorney, Quayle. Both these attorneys examined Mrs. Lucy S. Fulcher on matters equally within the knowledge of the deceased, having an important bearing on the main and controlling disputed question in the case as to the ownership of funds which were deposited by Mrs. Fulcher in banks after decedent's death, which funds included the $6,000 as claimed by Mrs. Fulcher.

Mrs. Fulcher was first put on the stand by plaintiff Morris for cross-examination and she on that cross-examination testified, among other answers, in response to repeated questions,

"After my sister died I got the $6,000 that mother gave Jennie. Mr. Morris [decedent] said they had no family and it was no more than right coming from my side of the family that I have it."

Also,

"There was $6,000 there that Charlie gave me * * * that came from my folks."

This is evidently the $6,000 gift the testimony respecting which by Mrs. Fulcher was ruled out by the court.

Mr. Quayle, attorney for plaintiff, at the beginning of the hearing, had moved that Attorney Bowler, the executor of the estate of Charles S. Morris, be admitted as coplaintiff and dropped as defendant. This motion was taken under advisement. It was granted at the conclusion of all proofs. The estate through Bowler, executor, acted throughout the entire hearing as coplaintiff and in cooperation with Wayne Morris, plaintiff, and appealed jointly with Wayne Morris, plaintiff. Plaintiff Wayne Morris as residuary devisee and legatee, had no strict right, as such, to maintain the bill of complaint without the acquiescence and support of the executor. The executor joins in plaintiff's brief herein, in which brief the examination of Mrs. Fulcher by Quayle, attorney for Wayne Morris, is relied on by both the executor and by plaintiff Wayne Morris, on the controlling question above noted.

Examination of opposite party by administrator is waiver of the statute to the extent of the matters on which she was examined. See *Geisel* v. *Burg*, 283 Mich 73; *Fowler* v. *Hamilton Moving & Storage Co.*, 324 Mich 614 (syllabus 5). In view of all the circumstances, we deem that the inhibition of the statute was waived by the estate.

Mrs. Fulcher, defendant, was examined in a proceeding in probate court under a petition brought in probate court for the purpose of being examined and cross-examined under oath pertaining to the assets of the estate. There are inconsistencies in her testimony given in probate court, in contrast with her testimony given on the hearing in the instant case. Mrs. Fulcher's memory seemed faulty. She was willing as a witness to testify to anything correct or incorrect that might tend to defeat the charge of her having surreptitiously taken the money from the

safe after decedent Charles S. Morris was stricken with his final illness.

Her testimony was so manifestly untrue, inconsistent with, and contradictory of, her previous statements, that her attorney was obliged to argue that this was due to her confusion. Any statement by Mrs. Fulcher about the money that she had on hand previous to the death of Mr. Morris, is to be viewed with suspicion and should not be accepted where uncorroborated. Witness McDivitt did corroborate her having $3,900 about 1926, and having loaned it to decedent Charles S. Morris. It was later paid back to her. She has earned no wages or salary since 1926.

There is testimony sufficiently supporting plaintiff's claim that decedent Charles S. Morris had on hand the amount of $17,500 at about the time of his death. Of the $10,000 for the sale of the undertaking business to Ford Anthony, more than $6,700 cash had been paid decedent Morris. The gross receipts of Charles S. Morris in the undertaking business during 19 years preceding the sale to Anthony in 1945, was about $117,000, from which gross amount the expense of the business and his living expenses being deducted, there could still be on hand the amount of cash that he is credited with in the testimony of Murl Morris, a distant relative of deceased, as having on hand near the time of his death. Charles S. Morris was very frugal in his living habits.

Mrs. Fulcher admitted to Murl Morris that the sum deposited by her in the banks ($17,500) was taken by her from the safe of Charles S. Morris. What she took from the safe was presumably the money of Charles S. Morris. Her deposits of $17,500 plus $110 that was retained by her at the bank must be considered as moneys of decedent, except that we may accord to her the ownership of $3,900 which it is corroborated that she owned in 1926.

We are not convinced that she had more than $17,610 of money all told in her rightful or wrongful control at the time of making the deposits.

Ivah Wright was not made a party to the original bill. It appears from the calendar entries that after the case had been fully heard and submitted, Ivah Wright appeared by attorney.* Our attention has not been called to any answer or cross bill, or petition or motion on her behalf, or notice of any hearing on any such petition or such motion, either for leave to intervene or for relief or for any determination or finding by the court, having been filed or made by her.

The decree of the trial court recites, "and Ivah Wright of Saginaw, Michigan, niece of defendant, Lucy Fulcher, having been added as a party defendant." No petition that she be so added as a party defendant is noted in the calendar entries.

The question arises, under such circumstances should we determine Ivah Wright's interest in the deposits in the bank that were made by her aunt in the joint name of her aunt and said Ivah Wright? We conclude that she has waived any right to object to our determination of matters litigated in the lower court. Her right to take the deposits as against Mrs. Fulcher's estate was not litigated. The question still remains whether Lucy Fulcher's $3,900 should be awarded to her estate or whether it should go to Ivah Wright as survivor of herself and her aunt, Lucy Fulcher.

The sum of $3,900 deposited by Mrs. Fulcher as a part of the total funds deposited by her shall, after deducting therefrom the sum of $1,000 admittedly withdrawn by her and also the sum of $110 returned to her by the Vernon bank, be paid, together with bank interest, to Mrs. Fulcher's estate, or to Ivah

---

* December 28, 1951.—REPORTER.

Wright as may be later determined. The remainder of the deposits together with bank interest shall be paid by the banks to plaintiff estate of Charles Morris. No costs, no party having prevailed in full.

BUTZEL, C.J., and CARR, BUSHNELL, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.