Harry MATHIS et al., Appellants,

v.

William F. HANNAN et al., Trustees for Anna Mae Hannan, et al., Appellees.

Court of Appeals of Kentucky.

May 17, 1957.

Rehearing Denied Oct. 4, 1957.

Boyd, Boyd & Lowry, Waller, Threlkeld, Whitlow & Byrd, Paducah, for appellants.

Terrell, Schultzman & Hardy, H. Warren Middleton, Earl T. Shoup, Paducah, for appellee.

MOREMEN, Judge.

On June 12, 1956, the Board of Commissioners of the City of Paducah, upon recommendation by the Planning and Zoning Commission, ordained an amendment to the original zoning ordinance and map (adopted in 1952) whereby the zoning classification of a parcel of land owned by appellees, Hannan, was changed from R–1, the highest type of residential specification, to B–1, which symbolizes that the property may be used for neighborhood business purposes.

This action was taken over the protest of appellants, adjoining property owners, who, for themselves and others similarly situated, attacked the ordinance in the circuit court on the ground that it is arbitrary, unreasonable, capricious and, therefore, invalid. The circuit court concluded that the reclassification was proper and dismissed the petition.

The original ordinance and map resulted from at least a year's work on the part of the city authorities who were advised during the time by Mr. Kenneth Schellie, a planning consultant from Indianapolis, Indiana. It was enacted under the general power granted by the legislature in Chapter 100 of Kentucky Revised Statutes and was restricted by subsection (3) of KRS 100.360 which provides that all plans and maps adopted by the commission shall be in accordance with a comprehensive design to promote the public health, safety, morals and general welfare.

■ This restriction is necessary because even the right of the state to delegate this power to the various cities emanates from the elusive power of the state called "police power" which has been defined by the United States Court of Appeals in Sinclair Refining Co. v. City of Chicago, 7 Cir., 178 F.2d 214, 216, as:

> "That power required to be exercised in order to effectually discharge within the scope of the constitutional limitations its paramount obligation to promote and protect the public health, safety, morals, comfort and general welfare of the people. Hence, in the use of his property according to his desires, the owner must not endanger the safety, health, comfort, or the general welfare of the people."

The zoning plan adopted discloses that the city of Paducah, as did many "river towns," began development along the Tennessee River and progressed in a westerly direction from that stream. Along the river bank and for almost half the breadth of the city, there exists a zone for heavy industry adjoining another strip designated as "conservancy." West of the heavy industry belt begin zones for general industry and for general business, and marked within this general business zone is the area called "downtown." After the various zones for heavy and general industry, downtown and general business areas, we reach another zone devoted entirely to heavy industry which is adjacent to a belt which may be devoted to general industry, and interspersed among these areas are residential zones which we assume are the older developments. Below these strips, and still in a westerly direction, we find residential sections containing reservations for neighborhood businesses. This area continues with uniformity until we reach a railroad which lies along Railroad Avenue. There are some allocations of space for general industry along this right-of-way and some for general business. West of the railroad the city is devoted almost entirely to residential uses which are designated as one or two-family dwellings. Immediately west of that is the R–1 area, the highest type of residential restriction, wherein the 13 acre tract belonging to appellees Hannan is situated. A reference to the map will disclose that the entire Hannan tract is surrounded by property devoted to high type residential purposes.

■■ The trial court, in a full and able opinion, pointed out that the comprehensive plan adopted by the city of Paducah could be changed from time to time by the commissioners under the terms of KRS 100.420 with no requirement of a change in condition, and this feature differed from the power granted to cities of the first class. In Shemwell v. Speck, Ky., 265 S.W.2d 468, 470, such a distinction was remarked, but the court, in that opinion, also said this:

> "The cases in which the courts have said that there must be a showing of a change of conditions are cases in which one piece of property, in a particular zoning district, has been singled

out and reclassified without there being any apparent basis for distinguishing it from the remainder of the district. See Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497, and Byrn v. Beechwood Village, Ky., 253 S.W.2d 395. In other words, it is only in the 'spot zoning' cases that the question of a change of conditions is involved."

We do not interpret the foregoing case as permitting the legislative body of a city of the second class to spot zone. The opinion is authority only for the principle that in cases where a particular piece of ground was improperly classified during the original zoning, the classification may be corrected by subsequent action without showing a change of condition.

In Polk v. Axton, 306 Ky. 498, 208 S.W. 2d 497, 500, which is cited as authority in the Shemwell case, it is said:

"What is known as 'spot zoning' is generally frowned upon by the courts. While the City Council has broad powers in respect to zoning, it is without authority to single out one lot in an amendatory ordinance and arbitrarily remove therefrom restrictions imposed upon the remaining portions of the same zoning district. There must be reasonable ground or basis for the discrimination. It is only where zoning ordinances are related in some way to the health, safety, morals and general welfare that they are valid. Selligman v. Von Allmen Bros., 297 Ky. 121, 179 S.W.2d 207."

We find nothing in the record indicating that the ground belonging to the Hannans was unsuitable for R–1 residential purposes. There is abundance of proof to the contrary. Its terrain and general characteristics seem to differ little from the adjoining territory which has been rather fully developed by the establishment of high type residences.

We are well aware of the fact that the legislative action of the governing board must be given great weight so long as it acts within the bounds of the legislative field but this ordinance, like other ordinances, must not be arbitrary or discriminatory. We think the issue in this case, therefore, narrows down to a determination of whether the legislative body arbitrarily spot zoned the Hannan property.

The question of spot zoning is a difficult one and it is hard to find a practical definition which suits each case. It was pointed out in Volume I, Section 93, in Yokley on Zoning Law and Practice, 2d Ed., that there are two types of condemned spot zoning: (1) where obviously a particular small lot or parcel of ground is singled out and placed in an area, the use of which is inconsistent with the classification change in the ordinance; and (2) where special benefits are sought to be conferred on a particular property owner or where a special burden is sought to be imposed on a particular property owner. The author points out that spot zoning amendments sabotage the laudable efforts of progressive municipal authorities to zone comprehensively the entire municipality. Yokley, by the use of the words, "small lot or parcel of ground," seems to limit the application of the spot zoning doctrine to small areas and we think it is a familiar association because most of us associate the word, "spot" with a small area in comparison with a large one, but the largeness and smallness are relative, and proper use may be determined only by comparison.

The spot that Lady Macbeth attempted to exorcise ("Out, damned spot! Out, I say!") was probably imaginary and did not exist at all except in her imagination, while sunspots, our dictionary says, may vary "from mere apparent points (probably 1,000 miles across) to spaces of 100,000 miles in extent." So we believe that each case must be determined in accordance with its circumstances. We cannot arbitrarily say that a 50 foot lot is small and a 13 or 14 acre tract is not small. Each must be related to its surroundings. The fact that this tract is owned singly does not change

its character. If many small adjoining lots with diverse ownership had been consolidated and rezoned, the problem would be the same.

■ It is not necessary to decide whether this case falls within the first prohibition set forth by Yokley, because we believe it is plain from the record that special benefits were being conferred on appellees, which were not related to the general welfare of the entire community and the action was detrimental to those who resided around the rezoned area. Selligman v. Von Allmen Bros., 297 Ky. 121, 179 S.W.2d 207.

We think the decision in this case should be governed by Parker v. Rash, 314 Ky. 609, 236 S.W.2d 687, 689. In that case the commission amended an original zoning ordinance to permit the erection of a building to house well-equipped doctors' offices in a zone which was confined to multiple family residences. In the opinion we quoted with approval from 149 A.L.R. 292, the following language:

"So generally speaking, it has been held that where an ordinance establishes a small area within the limits of a zone in which are permitted uses different from or inconsistent with those permitted within the larger, such 'spot zoning' is invalid where the ordinance does not form a part of a comprehensive plan of zoning or is for mere private gain as distinguished from the good of the common welfare,"

and held that such an amendatory zoning constituted spot zoning because there was no uniformity of application over a general area and only a particular piece of property had been singled out for action. In answer to the contention that such a structure would contribute to the general welfare, it was pointed out that every lawful enterprise so contributes.

In the case at bar we recognize that shopping centers are desirable businesses when properly located. We do not think that

this benefit outweighs the right to protection which appellees' neighbors have.

For the reasons stated, the judgment is reversed.

STEWART, J., not sitting.