ROBERT L. HERMANN et al., appellants, v. CITY OF DES MOINES et al., appellees.

No. 49753.

(Reported in 97 N.W.2d 893)

1282

July 24, 1959.

Rehearing Denied October 21, 1959.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellants.

Robert J. Spayde and Robert G. Allbee, both of Des Moines, for appellees.

Charles F. Wennerstrum, of Des Moines, amicus curiae.

Thompson, C. J.—We are here concerned with an attempt

by the City of Des Moines to spot zone a portion of Lot 10, Chetwynd, a part of the city. The tract in question lies on the west side of West Thirty-fourth Street in a block bounded on the north by Forest Avenue and on the south by University Avenue. On July 9, 1953, the City of Des Moines enacted its comprehensive zoning Ordinance No. 5453. This ordinance placed all of the property in the block which includes the tract in controversy in Zone R-2, which means it was restricted to one and two family dwellings, except for some lots lying on the south and north lines of Forest and University Avenues respectively. This ordinance is still in full force and effect, except that as to the part of Lot 10, Chetwynd, here involved, the city council on June 23, 1958, rezoned all of said Lot 10 except the west 200 feet thereof so as to place it in Zone R-3, known as a Multiple Residence district. The amendatory ordinance is No. 5926 and is the one under attack here.

The plaintiffs are resident taxpayers of the city residing on property owned by them on West Thirty-fourth Street between Forest and University Avenues. They contend that the amendatory ordinance provides for illegal spot zoning, ask that it be so decreed, and that any action under it be enjoined. The trial court upheld the ordinance and dismissed plaintiffs' petition.

The case was tried upon a stipulation of facts, from which the following matters appear: the enactment of Ordinances Nos. 5453 and 5926; the character and use of the property on West Thirty-fourth Street between Forest and University Avenues has remained unchanged since the passage of Ordinance No. 5453 except that Lot 8, Chetwynd, has become an illegal non-conforming use; the property rezoned by. Ordinance No. 5926 is similar in character, adaptability and use to the surrounding property and was used as a one-family dwelling until after the passage of Ordinance No. 5926 and was suitable for such one family dwelling as well as for multiple dwelling; Exhibits B and C are zoning maps correctly showing the location of the tract involved and the surrounding properties and their use at the time of the enactments of the two ordinances, Nos. 5453 and 5926.

An examination of the zoning maps, Exhibits B and C, shows that Lot 10, Chetwynd, lies on the west side of West Thirty-fourth Street, with that part of it which is rezoned facing the street. It is 87 feet in width and extends to the rear some 262 feet. The entire lot is 462 feet in length, but the rear 200 feet is not rezoned. Lot 11, Chetwynd, immediately south of Lot 10, is 72 feet wide, and Lot 12, next on the south, is 80 feet in width. Each of these lots is zoned R-2. On the south of Lot 12 is Lot 13, 160 feet in width, extending to University Avenue, which is zoned R-3 by Ordinance No. 5453. To the north of Lot 10 lie Lots 9 to 2 inclusive, and north of Lot 2 a tract 100 feet wide which is a part of Kraetsch Place, another addition to Des Moines; all of which are, by Ordinance No. 5453, zoned R-2. Lot 9 is 88 feet in width on West Thirty-fourth Street; Lot 8, 89 feet; Lots 7 to 3 inclusive, each 62 feet; and Lot 2, 110 feet.

It thus appears that the effect of Ordinance No. 5926 is to make of Lot 10, except the rear 200 feet, an R-3 island entirely surrounded by R-2. The stipulation of facts shows that the property on West Thirty-fourth Street between Forest and University has remained unchanged in character since the passage of Ordinance No. 5453, except that Lot 8 has become an illegal nonconforming use. Across Thirty-fourth Street to the east the property is also zoned R-2. There are, however, seven lots fronting on West Thirty-fourth Street which are legal nonconforming uses. This means that they were being used and occupied in their present status before and at the time of the enactment of Ordinance No. 5453.

I. The statement of facts indicates the proper decision in the case. Neither the able counsel for the defendants nor the distinguished advocate who appears as amicus curiae has pointed out to us any specific reasons why the public welfare will be promoted or the public health, safety or morals benefited by the amendatory ordinance. They rely upon the thoroughly established proposition that the city council had a wide discretion and its actions in setting up zones are backed by a strong presumption of reasonableness and validity. This cannot be disputed. Zoning ordinances may be amended at any time conditions warrant, and the action of the zoning authorities will not

be interfered with if the question is fairly debatable. Keller v. City of Council Bluffs, 246 Iowa 202, 207, 66 N.W.2d 113, 116, 51 A. L. R.2d 251, 257; Brackett v. City of Des Moines, 246 Iowa 249, 260, 67 N.W.2d 542, 547, 548. The same authorities hold that the burden is upon one asserting the invalidity of a zoning ordinance to show in what respects it is arbitrary, or capricious, or discriminatory.

But we think such proof appears here. Section 414.1 of the Code of 1958 empowers cities or towns to enforce zoning restrictions and regulations "for the purpose of promoting the health, safety, morals, or general welfare of the community * * *." This measures the authority of the municipality to impose such restrictions and regulations. Something must appear from which it may fairly be deduced that the proposed zoning comes within the purview of the authorizing statute. We are unable to find anything in the rezoning of a part of Lot 10 which will in any way promote the public health, morals, safety or general welfare. It must be kept in mind that the comprehensive zoning ordinance, enacted in 1953, placed this lot in R-2, together with all territory immediately surrounding it. No reason appears, none is suggested, why this tract should now be singled out for removal of many of the restrictions originally placed upon it and which still affect the remainder of the property in the block. It is spot zoning; and while not all spot zoning is illegal per se, the courts look upon it with some disfavor. This, of course, arises from the nature of things. Properly, it is held that one property owner should not be favored over his neighbors in the absence of a good reason therefor. An analysis of the Keller case, supra, and the language used therein in stating the governing principles point the way to a proper decision in the instant action. In the Keller case the city council had rezoned three lots, parts of each of which were occupied by a large house, about fifty-five years old, four stories high, containing sixteen rooms, from "A" residential to "B" residential. This latter classification included use as a convalescent or nursing home. It appeared that the comprehensive zoning ordinance which placed these lots in "A" residential had been enacted in 1927; the amendatory ordinance under attack

was passed in 1949. But the property in question had never been used as a single family residence as required by "A" residential since prior to the adoption of the comprehensive ordinance. It had been used as a medical clinic, apartments for from three to five families, a boarding and lodging house, and convalescent home. We referred to section 414.3 of the Code which requires that zoning regulations shall be made *"with a view to conserving the value of buildings* and encouraging the most appropriate use of land * * *." Page 210 of 246 Iowa, page 118 of 66 N.W.2d, page 259 of 51 A. L. R.2d.

It was then held that since the facts showed that the original ordinance relegated the property in question to a use for which it was unfit and almost if not entirely useless, the city council was within the exercise of its proper discretion in rezoning. The gist of the decision in the Keller case is found in these words:

"The spirit of a zoning ordinance is not violated nor is it inconsistent with a comprehensive zoning ordinance to grant a just and reasonable exception by amendment based upon the character and use of property not similar to other property in the district, but [which] is now and was distinguishable before the adoption of the comprehensive zoning ordinance." 246 Iowa, page 210, 66 N.W.2d, page 118, 51 A. L. R.2d, pages 259, 260.

But the stipulation in the case now before us provides: "That the property rezoned by Ordinance 5926 is similar in character, adaptability, and use to the surrounding property and was used as a one family dwelling until after the passage of Ordinance 5926 and was suitable for such one family dwelling as well as suitable for multiple dwelling."

■ It is at once apparent that the reasons given for upholding the exception in the Keller case do not obtain here. The tract rezoned by Ordinance No. 5926 is similar in all respects of use, character, and adaptability to the surrounding property; it is suitable for use as a one family dwelling and was so used at the time of the enactment of the amendatory ordinance. In this situation, language from the Keller case is appropriate. Thus, at pages 206 of 246 Iowa, 116 of 66 N.W.2d, 257 of 51 A. L. R.2d, is this statement: "The rule generally stated is that a city council does not have the authority to amend a comprehensive zoning law so as to remove or impose less oner-

ous restrictions upon a small tract or lot similar in character and use to the surrounding property."

Again, at pages 213 of 246 Iowa, 120 of 66 N.W.2d, 261 of 51 A. L. R.2d we said: "Action of imposing restrictions that do not bear alike on all persons living in the *same territory under similar conditions and circumstances* is discriminatory and will not be upheld. * * * That a zoning statute must be impartially applied as to all properties similarly situated is beyond dispute." We quote further from the same case, pages 214 of 246 Iowa, 120 of 66 N.W.2d, 262 of 51 A. L. R.2d: "The better rule, we think, is that there must be substantial and reasonable grounds or basis for the discrimination, when one lot or tract is singled out in an amendatory ordinance removing therefrom restrictions imposed upon the remaining portions of the same zoning district."

The rules laid down in the three quotations last above apply with full force to the situation now before us. It is true that across West Thirty-fourth Street to the east there are seven lots which are not used in conformity to the requirements of R-2. But these are legal nonconforming uses; they were there when the original comprehensive ordinance, No. 5453, was enacted. The city council at that time must have considered that the tract, in which Lot 10, Chetwynd, lies, was properly zoned R-2 in spite of the nonconforming uses across the street. There is no change in the general situation, no difference in the uses of the surrounding property since enactment of the general ordinance; except that Lot 8, Chetwynd, is now an illegal conforming use. But this means no more than that someone is using his property in violation of the provisions of Ordinance No. 5453, and presumably such use may at any time be prevented by proper action of the authorities.

It is urged that all of these properties lie near Drake University and that we must consider the expansion of this fine and growing institution and the need for more multiple housing for faculty and students, and that the character of the neighborhood is changing. There is nothing in the stipulation of facts that tells us of the location of the University or how near to or far it may be from the block in question. We shall not attempt to say whether these are matters of which judicial notice

may be taken. If we should take such notice, we should also be compelled to know that Drake University was in the same location when the original ordinance was enacted. Nor would such a fact be a basis for discrimination between Lot 10 and the other tracts near by which are still under the restrictions of R-2. Such a contention would at most be only an argument for rezoning the entire district; it does not justify the city council in saying, because of the needs of the University and its people, Lot 10 may be rezoned, but the surrounding tracts must continue under the same burdens as before.

The rules laid down in the Keller case are sufficient to require us to hold the amendatory ordinance, No. 5926, is void as being an illegal act beyond the powers of the Des Moines City Council. The same question has arisen in many other jurisdictions, and has had the attention of the text writers, with the uniform holding that zoning auhorities may not single out one "spot" or tract and remove some or all of the restrictions upon it unless some reason appears for the discrimination and the action bears some relation to the public welfare. See Yokley on Zoning Law and Practice, Volume I, section 93; 3 McQuillin, Municipal Corporations (Rev.), section 1048.

In Leahy v. Inspector of Buildings, 308 Mass. 128, 133, 31 N.E.2d 436, 439, the Massachusetts Supreme Court said: "* * * mere economic gain to the owner of a comparatively small area is not sufficient cause to invoke an exercise of this amending power for the benefit of such owner."

Polk v. Axton, 306 Ky. 498, 503, 208 S.W.2d 497, 500, states the rule thus: "What is known as 'spot zoning' is generally frowned upon by the courts. While the City Council has broad powers in respect to zoning, it is without authority [power] to single out one lot in an amendatory ordinance and arbitrarily remove therefrom restrictions imposed upon the remaining portions of the same zoning district. There must be reasonable ground or basis for the discrimination."

There is a thorough discussion of the principles involved in Page v. City of Portland, 178 Ore. 632, 165 P.2d 280, 283. Other authorities announcing the same principles which we apply in the case at bar are Snów v. Johnston, 197 Ga. 146, 28 S.E.2d 270, 279; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411;

Potts v. Board of Adjustment of Borough of Princeton, 133 N. J. L. 230, 239, 43 A.2d 850, 855 ("It is only in rare instances and under exceptional circumstances that relaxation of the general restriction is permissible.") ; Mathis v. Hannan, Ky., 306 S.W.2d 278; Smith v. Board of Appeals of Salem, 313 Mass. 622, 48 N.E.2d 620. The question is discussed and authorities cited in the annotation to 149 A. L. R. 292.

The dissenting opinion herein places much stress upon the stated fact that the rezoned property is to be used as a sorority house, and dwells at some length upon the desirability of such use. It seems proper to point out that no such fact appears in the record. The use to which the tract is to be put nowhere appears. The stipulation of facts upon which the case was tried below is silent on this point. The trial court in its findings of fact, Paragraph 8, referred to "other" fraternity and sorority houses in the block. If it meant thereby to say that the rezoned property was to be so used, it was also entirely outside the factual record.

 Nor would it be of importance if such a fact were in the record. The property is rezoned R-3, which includes many uses besides sorority and fraternity houses. These include funeral homes, boarding and rooming houses, and convalescent and nursing homes, among others. So, even if it appeared that the intended present use is for a sorority house, as the dissent assumes, being once rezoned the property might tomorrow be put to any of the other uses permitted by R-3. It is not the present use but the possible many uses permitted by R-3 that must be considered here. And again, the argument that a sorority house is a beneficent use in no way answers the question of discrimination. Why should the owner of Lot 10 be permitted to use his property in a way denied to immediately surrounding property similarly situated and similarly usable?

 Discrimination between citizens, without reasonable basis therefor, has always been held to be beyond the power of legislative bodies. There is no reason why Lot 10, or a part thereof, should be freed of the restrictions of R-2 zone and given the larger freedom of R-3, while Lot 9, immediately north, and Lots 11 and 12, bordering on the south, and other near-by tracts, must remain in R-2. It affirmatively appears from the stipula-

tion that the rezoned tract is similar in character, adaptability and use to the surrounding properties. It is suitable for use as a one family dwelling. It is not important that the plaintiffs show their property has been damaged, if the net result is unjust discrimination against them. The net result of the "spot" created by Ordinance No. 5926 may be as offensive as a spot of gravy on a clean shirt; or it may, in fact, as some spots do, serve a beneficial or decorative purpose. In either event, the surrounding property, under the circumstances shown here, had a right to equal treatment. Shakespeare's Lady MacBeth cried: "Out, damned spot!" We omit the expletive.

The case is reversed and remanded to the trial court, with directions to enter a decree in accordance with this opinion.— Reversed and remanded for decree.

BLISS, GARFIELD, GARRETT, HAYS, LARSON, OLIVER, and THORNTON, JJ., concur.

PETERSON, J., dissents.

PETERSON, J. (dissenting)—I respectfully dissent. I will briefly state my reasons. I accept the statement of facts as to the Des Moines situation as stated in the majority opinion.

In the final analysis there is only one question in the case. Did the Des Moines City Council act in an arbitrary, unreasonable or capricious manner in adopting amendatory Ordinance No. 5926?

I doubt the wisdom of spot zoning. However, since we have adopted the doctrine in Iowa in Keller v. City of Council Bluffs, 246 Iowa 202, 66 N.W.2d 113, 51 A. L. R.2d 251, we should be consistent. The majority does not overrule the Keller case, but attempts to distinguish it. Without a strong and impelling reason it does not seem consistent to approve the theory in the Keller case, and disapprove it in the case at bar. I fail to find any such reason.

Adoption of zoning ordinances, and amendments thereto, is a legislative function, and should not be disturbed by the judiciary, unless such ordinances or amendments are arbitrary, unreasonable or capricious. Furthermore, if fairly debatable, the legislative judgment should control. Keller v. City of Council

Bluffs, supra; Brackett v. City of Des Moines, 246 Iowa 249, 67 N.W.2d 542; McMahon v. City of Dubuque, 8 Cir., 255 F.2d 154.

The basic theory of spot zoning, as announced in the Keller case, is as follows (page 207 of 246 Iowa): "We are of the opinion the governing body of a municipality may amend its zoning ordinances any time it deems circumstances and conditions warrant such action, and such an amendment is valid if the procedural requirements of the statutes are followed and it is not unreasonable or capricious nor inconsistent with the spirit and design of the zoning statute."

The majority say the distinction between the Keller case and the case at bar is that in the Keller case the rezoned property had been used for many years as a rooming house and convalescent home; in the Hermann case the house had been a large one family home. This is not a criterion establishing the action of the City Council as arbitrary, unreasonable or capricious.

Also, the question is fairly debatable in the case at bar, under which circumstances there should be no judicial interference. Brackett v. City of Des Moines, supra.

The case above-cited has analyzed this situation carefully and cites several supporting cases, as follows at page 260 of 246 Iowa:

"The strong presumption in favor of a legislative act applies as well to zoning ordinances, and if the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016, 1025; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1117, 184 N.W. 823, 188 N.W. 921, 23 A. L. R. 1322; Geneva Inv. Co. v. City of St. Louis, 8 Cir., Mo., 87 F.2d 83, 89 to 91; Kiges v. City of St. Paul, 240 Minn. 522, 531, 62 N.W.2d 363, 370; City of Corpus Christi v. Jones, Tex. Civ. App., 144 S.W.2d 388, 398 et seq.; Yokley, Zoning Law and Practice, Second Ed., sections 33 and 37; 58 Am. Jur., Zoning, sections 16 and 21. Similar, in effect, are statements that provisions of a zoning ordinance will not be held invalid unless they clearly appear to be arbitrary and unreasonable. Board-

man v. Davis, 231 Iowa 1227, 1231, 3 N.W.2d 608; Keller v. Council Bluffs, 246 Iowa 202, 207, 208, 66 N.W.2d 113, 116, 117 [51 A. L. R.2d 251]."

The same decision also states: "The city council, in determining and establishing this and other zones, acted within the scope of the police power and as authorized by statute. Hence, courts will not substitute their judgment as to the wisdom or propriety of such action for that of the city council. Various circumstances tend to support the propriety and wisdom of the legislative classification of these lots as residential. We are satisfied that question was, at least, fairly debatable." (Italics supplied.)

There are several decisive elements in the instant case which show the basis of the council action to be logical and reasonable, and which negative the action of the city to be arbitrary, etc.: (1) The ordinance amendment creates no damage as to general conditions in the neighborhood. (2) There is no prejudice nor damage to property of plaintiffs, who are neighbors in the community. (3) The general welfare of this area in the community is enhanced.

1. On Thirty-fourth Street, in the block where the property is located, are three other sorority houses, and one fraternity house. Plaintiffs are the neighbors among these houses. The block is a reasonable and logical location for the establishment of another sorority house.

2. The properties of plaintiffs have not suffered one penny of damage. To trade a large family home, which perhaps housed the parents and several children of varying ages, for a house with 8 to 10 studious and, no doubt, high-type, sorority college girls, is an asset to the property on any street. This is far preferable to the detriment caused by the old dilapidated convalescent home involved in the Keller case.

3. Section 414.1, Iowa Code, 1958, provides: "For the purpose of promoting * * * the general welfare of the community, any city or town is hereby empowered to regulate and restrict * * * the location and use of buildings * * * and land for * * * residence or other purposes."

Since we have approved spot zoning this has reference to the welfare of the area involved. In its legislative discretion, as

a matter of sound good judgment, the Des Moines City Council had the right to determine that the general welfare of this area in the community was enhanced.

The action of the City Council cannot be called arbitrary, unreasonable nor capricious. The Council had legislative discretion which it exercised in a sensible manner. The judiciary should not interfere.

I would affirm.