Argued December 17, 1929; reversed January 28, 1930

# G. J. BERGER *v.* CITY OF SALEM ET AL.

(284 Pac. 273)

For appellants there was a brief over the names of *Mr. Fred A. Williams,* city attorney, and *Messrs. Keyes & Page,* with an oral argument by *Mr. Williams* and *Mr. E. M. Page.*

For respondent there was a brief and oral argument by *Mr. Miller B. Hayden.*

HAMILTON, A. A. J. Among other things, it is claimed that the enforcement of said ordinance No. 2175 under the facts existing in the present cause is giving it a retroactive effect, and is violative of plaintiff's rights as guaranteed by the 14th amendment to the Constitution of the United States.

The narrated facts show that in July, 1925, the city of Salem passed an ordinance providing for a planning and zoning commission and prescribing its powers and duties, which commission thereupon commenced a survey of the city with a view of reporting and recommending the enactment of an ordinance dividing the city into districts or zones, within some of which it should be unlawful to erect, construct or alter certain specified buildings, or to carry on certain trades or callings. The commission rendered its report on October 18, 1926.

Shortly before this date the plaintiff made his application for the permit as aforesaid. On the 21st day of December, 1926, less than one month after the commencement by plaintiff of the present suit, the council passed, and the mayor approved, the said zoning ordinance No. 2175. This ordinance had attached to it an emergency clause. The said property owned by plaintiff was a vacant lot located in zone II, where service stations are prohibited, and no action had been taken towards the construction of any building thereon.

The court in its findings and decree adjudged that said ordinance No. 2175, known as the planning and zoning commission code, and set up as a defense by defendants subsequent to the filing of plaintiff's complaint, is not applicable and does not apply in this suit, and the reason given is that its enforcement would give it a retroactive effect, and hence would be violative of plaintiff's rights. This conclusion is so reached, as is asserted, for the reason that plaintiff, as hereinbefore recited, had filed with the city council his application for the issuance of the said permit; that, on November 29, 1926, plaintiff duly instituted this suit, and that thereafter, on December 21, 1926, while this suit was pending, the said council passed ordinance No. 2175, which is duly pleaded in this suit as a defense thereto.

It is provided by § 3873, O. L., as follows:

"For the public interest, health, comfort, convenience, preservation of the public peace, safety, morals, order and the public welfare, the city council, board of trustees or other legislative body of any incorporated city and town of Oregon, hereinafter referred to as the council, may by ordinance create or divide the city into districts within some of which it shall be lawful and within others of which it shall be unlawful to erect,

construct, alter or maintain certain buildings, or to carry on certain trades or callings or within which the height and bulk of future buildings shall be limited.''

It is recognized as a cardinal principle of our civil jurisprudence that it is not within the competency of a municipality to regulate or restrict the lawful use of property, unless such regulation or restriction tends in some degree to promote or secure the public health, safety, morals or general welfare of the inhabitants of the municipality; and if such regulation or restriction bears no real or substantial relation to the accomplishment of one of these ends it cannot be justified as a valid use of the police power, and is unauthorized and void.

If the question of law presented as to the authority of boards of trustees or legislative bodies of incorporated cities of the state of Oregon to exercise and delegate such powers as are set forth in ordinance No. 2175 of the city of Salem in the instant cause had not received attention by this court and for most part been determined, it would indeed be interesting, and more difficult of solution. But, in great measure, the rule of *stare decisis* is a complete answer to plaintiff's contention. The defendants have cited as authority *Kroner v. City of Portland et al.*, 116 Or. 141 (240 P. 536). This involved the question of an application to the city council of Portland for permission to construct a building to be used as a creamery and retail store. The city of Portland was acting under the same legislative act and under ordinance from which ordinance No. 2175 in the instant cause was largely patterned. In that case the court says:

''The general rule relating to local regulation concerning the use of property for business purposes in

thickly inhabited cities is aptly stated by Mr. Justice Pitney in *Reiman v. City of Little Rock,* 237 U. S. 171 (59 L. Ed. 900, 35 Sup. Ct. Rep. 511), thus:

" 'While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the law-making power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the fourteenth amendment.' "

This court then says, in said cause of *Kroner v. City of Portland,* supra.

"The exercise of the police power is a matter of legislation, and the courts cannot interfere with such expressions of the power unless it is shown that it is purely arbitrary or that the legislation has no connection with or bearing upon legitimate objects sought to be attained.

  *   *   *   *   *

"Applied to the present situation, it is very clear that a creamery, with its boilers, milk cans, delivery trucks, processes of manufacturing, and fire risks of the business, requires treatment in the way of regulation different from that appropriate to a mere private dwelling."

Sustaining the view expressed in *Kroner v. City of Portland,* supra, are the following authorities: *Miller v. Board of Public Works* (Cal.), 234 P. 381, 383 (38 A. L. R. 1479); *Baxley v. City of Frederick* (Okla.), 271 P. 257. In *Miller v. Board of Public Works,* supra, the court says:

"In its inception the police power was closely concerned with the preservation of the public peace, safety, morals and health, without specific regard for 'the

general welfare.' The increasing complexity of our civilization and institutions later gave rise to cases wherein the promotion of the public welfare was held by the courts to be a legitimate object for the exercise of the police power. As our civic life has developed so has the definition of 'public welfare' until it has been held to embrace regulations 'to promote the economic welfare, public convenience, and general prosperity of the community': *Chicago, B. & Q. R. v. Illinois,* 200 U. S. 561, 592. Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and in keeping with the growth of knowledge and the belief in the popular mind of the need for its application, capable of expansion to meet existing conditions of modern life, and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, 'there is nothing known to the law that keeps more in step with human progress than does the exercise of this power,' * * * and that power 'may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.' * * *

"There can be no question but that there is a prevailing and preponderating sentiment in favor of necessary and reasonable zoning. The growth of this sentiment has been rapid and widespread. The first comprehensive zoning ordinance was that of New York city enacted in 1916. According to a recent bulletin of the United States department of commerce, 35 states and the District of Columbia have adopted this form of regulation; 221 municipalities have been zoned, and over 22,000,000 inhabitants, aggregating 40 per cent. of the urban population of this country, are living in zoned territory. The rapidity of the growth of the sentiment in favor of comprehensive zoning, coupled with the extensive and successful application of the idea, are evidence of its present and potential value for the promotion and perpetuation, along broader and better lines, of the moral and material welfare of a people.

"So thoroughly has the value of zoning been demonstrated that no longer is the constitutionality of the principle open to question."

■■ In view of the announcement of the law in *Kroner v. City of Portland,* supra, it may be said that the state of Oregon is in accord with the courts of the different states declaring that the regulation of the development of a city under a comprehensive and carefully considered zoning plan does tend to promote the general welfare of a community, and that the adoption and enforcement of such a plan, when fairly conceived and equably applied, is well within the scope of the police power. In the instant cause it has not been claimed that zoning ordinance No. 2175 of the city of Salem, in its enactment as a whole or in any of its parts, is obnoxious to any rule or rules governing the same which render it invalid. But the contention here relied upon, and the ground of decision in the lower court, is that the said ordinance so passed after plaintiff had filed his application with the city council to build and maintain a filling station where gasoline, distillate and oils could be kept and stored for sale, and after this suit had been commenced, is retroactive as to plaintiff's right herein. It is stated in the said decree as follows:

"It is ordered, adjudged and decreed  *  *  * that ordinance No. 2175,  *  *  * which was approved by the mayor on the 21st day of December, 1926, is hereby declared to have no effect upon the rights or privileges of this plaintiff and does not apply to this cause of suit."

This contention has received judicial attention. It is solved by application of equitable principles. The authorities to which our attention has been called do not sustain the doctrine upon which the present decree is based. The case of *Baxley v. City of Frederick*

(Okla.), 271 P. 257, is a case in point. In that case, as in this, the defendants set forth the passage of a zoning ordinance after the commencement of the suit. Plaintiff therein filed reply wherein he alleged that "the purported zoning ordinance arose long after the commencement of the suit and ought to be disregarded and stricken from the amended answer; that if the allegations pertaining to said zoning ordinance be allowed and considered as a defense, then such ordinance is invalid in that it violates the constitutional protection of property afforded by the fifth and fourteenth amendments of the constitution of the United States." The court, referring to said assignment of error, says:

"One of the assignments of error relied upon and urged, but without any citation of authority supporting the same, is that the court erred in holding that the defendants were entitled to set out in their amended answer the zoning ordinance, because it was passed after the filing of the action, and in permitting such ordinance to be offered in evidence.

"We fail to observe any error in the action of the trial court in permitting the defendants to set up in their amended answer the zoning ordinance. The mere fact that such zoning ordinance had not been enacted at the time the plaintiff commenced this action would not preclude the defendant from pleading the same as a defense. * * *

"Argument similar to the one advanced by the plaintiff here was presented in the case of *State ex rel. Civello v. New Orleans,* 154 La. 271, 97 So. 440, 33 A. L. R. 260. It appears in that case as in the present one the plaintiff attacked the validity of an ordinance prohibiting the erection of a busness building in a certain portion of the city. Subsequent to the filing of the case the city enacted a further ordinance on the subject. The court there said:

" 'Relator's argument that the ordinance No. 6689 cannot govern this case without having a retroactive

effect is not well founded. It is based upon the idea that relator, by applying for the permit, and by filing this mandamus suit to compel the issuance of the permit, became invested with an absolute right to the permit, which could not be divested by any subsequent legislation by the municipal council.'

' "A zoning ordinance is not invalid as retroactive because made applicable to property for which a permit to construct a building has been applied for and a writ of mandamus sought to compel its issuance. That the court has decided that certain city-zoning ordinances were *ultra vires* does not require the municipal authorities to ignore another ordinance forbidding the erection of a certain class of buildings in a prescribed district when application is made for a permit contrary to its terms."

In accord with and sustaining the above declaration of the law are the following additional authorities: *Spector v. Building Inspector of Milton* (Mass.), 145 N. E. 265, and *Brett v. Building Commissioner of Brookline* (Mass.), 145 N. E. 269.

The plaintiff's property is a vacant lot. There have been no improvements placed thereon, nor expenditures of any nature in contemplation of the use for which application to the city council was made.

The action of the lower court in granting the decree of injunction in this suit is error. The decree is reversed, and an order made dismissing the complaint filed herein, with costs to defendant.

REVERSED and DISMISSED.

COSHOW, C. J., and BEAN and BELT, JJ., concur.