Argued October 16, 1945; affirmed January 22; rehearing
denied May 28, 1946

PAGE ET UX. *v.* CITY OF PORTLAND ET AL.

(165 P. (2d) 280)

*L. E. Latourette,* City Attorney, of Portland (James West, Deputy City Attorney, of Portland, on the brief), for appellants City of Portland and others.

*Jay Bowerman* and *Robert C. Bradshaw,* both of Portland (Veatch & Bradshaw, of Portland, on the brief), for appellants K. F. Hughes and Safeway Stores, Inc.

*Arthur H. Lewis* and *Heny Bauer,* both of Portland, for respondents.

BELT, C. J.

This is a suit to enjoin the enforcement of an amendatory zoning ordinance of the City of Portland purporting to reclassify two lots, owned by the defendant Hughes, so as to permit their use for business purposes. The lots were formerly in Zone I, or a residential district. If the ordinance is sustained, they will be changed to Zone III, or a business district. The plaintiffs, who are home-owners in the residential district and whose property is 100 feet north of the north line of the lots in question, challenge the validity of the ordinance on the ground that it is an arbitrary and unreasonable exercise of police power. The ordinance is attacked on other grounds but, in view of the conclusion reached on the above issue, it will not be necessary to consider them. From a decree in favor of the plaintiffs that the ordinance is null and void, the defendants have appealed.

In 1924, the City of Portland enacted a comprehensive zoning ordinance dividing the municipality into four use districts, viz: Zone I, single family dwellings; Zone II, multiple dwellings; Zone III, business; and Zone IV, unrestricted. The ordinance is set forth in greater detail in *Roman Catholic Archbishop of Diocese of Oregon v. Baker,* 140 Or. 600, 15 P. (2d) 391. Its constitutionality, in its general scope, was sustained in *Kroner v. City of Portland,* 116 Or. 141, 240 P. 536. The lots comprise a tract of land 100 feet square located

at the northeast corner of N. E. 33rd Avenue and N. E. Knott Street, and is approximately in the center of an exclusive residential district about one mile in width and two miles in length. The district is bounded on the south by N. E. Broadway; on the west by N. E. 7th Avenue; on the north by N. E. Fremont; and on the east by N. E. Sandy Boulevard. Mrs. Hughes has owned these vacant lots for more than twenty years, and now proposes to sell them to the Safeway Stores, Inc., which contemplates the erection of a store building thereon for the purpose of engaging in retail grocery business.

On the southwest corner of this street intersection, there is a drug store, grocery store, and meat market, all of which are non-conforming uses, authorized prior to the enactment of the original zoning ordinance. There is a residence on the northwest corner of the intersection; the lots on the southeast corner are vacant. Aside from the above mentioned commercial enterprises, there are no business houses within a quarter of a mile of the intersection in question. There are, however, business houses on the perimeter of this large district on Broadway and the eastern part of Fremont Street.

We have adverted to the business conducted on the southwest corner of the intersection to show the actual conditions but, since these business activities existed prior to the enactment of the original zoning ordinances and are therein defined as non-conforming uses, such cannot be considered relative to the question as to whether there has been any substantial change in the character of the district.

On October 24, 1940, the defendant, Mrs. Hughes, filed a petition for a change of zone and it was referred to the Planning Commission which later reported

favorably thereon. On December 19, 1940, the petition was referred to the Commissioner of Public Works and was held by him, at the request of the petitioner, without action until May, 1942, when it was returned to the Council for consideration as a whole. The Council, in May of the same year, referred the petition again to the Planning Commission for further consideration and it reported that the petition should be denied. The Council, in July, laid the petition on the table. After a cooling period had expired, it was taken from the table in December, 1943, for further consideration. The ordinance, changing the zone, was finally passed by a majority vote on January 28, 1943. Mrs. Hughes during the course of the years filed three previous petitions to change the zone but all of them were denied. Indeed, ever since this residential district was created in 1924, it has been subjected to attempted invasion by commercial interests. The above recital of the history of this petition has not a great deal to do with the legal problems confronting the court, but it, at least, affords an interesting back-ground.

The plaintiffs contend that the change of zone is an arbitrary and unreasonable exercise of the police power and has no substantial relation to the public welfare. They assert that permission to use these lots for commercial purposes is contrary to the purpose and spirit of the comprehensive zoning plan of the city and will result in arbitrary discrimination between property owners similarly situated. They also contend that this change of zone constitutes a taking of their property without process of law.

Defendants assert that the amendatory ordinance is a valid exercise of the police power and that it is not practicable or feasible to use the lots for residential purposes. They also contend that there has been a

substantial change in the district adjacent to this street intersection and that the Council in the exercise of its wide discretion had the right thus to reclassify the property. Mrs. Hughes says in effect that to restrict the use of these lots to residential purposes is depriving her of any beneficial use thereof and constitutes a taking without due process of law.

██ Since the leading case of *Village of Euclid, Ohio v. Ambler Realty Company,* decided by the Supreme Court of the United States in 1926, reported in 272 U. S. 365, 71 L. ed. 303, 47 Sup. Ct. Rep. 114, 54 A. L. R. 1016, the power of a municipality to enact reasonable zoning ordinances regulating the use of property is no longer questioned. Zoning is an exercise of the police power. It is fundamental that the various classifications of property as to their use must bear some substantial relation to the public welfare. 3 McQuillan Mun. Corp. (Rev.) § 1048, 43 C. J. 340 § 369. It is a power which cannot be invoked to further private interests which conflict with the right of the public in general. When the two conflict, the interests of the individual are subordinate to public welfare. The original zoning ordinance was enacted by virtue of a valid exercise of the police power and amendments thereto must likewise be effectuated. These principles are fundamental and are fully recognized by counsel in the able briefs submitted.

Authority to zone or establish use districts was conferred upon the City of Portland and other municipalities by Chapter 300, Laws of Oregon for 1919, codified as § 95-2401 O. C. L. A., wherein the power thus delegated was, as stated therein, "for the public interest, health, comfort, convenience, preservation of the public peace, safety, morals, order and the public welfare." Establishing a residential district wherein

commercial enterprises are excluded tends, without doubt, to promote the public welfare. We may assume that the Council, in creating the residential district in 1924, had in mind the purposes recited in the above Enabling Act. The reasons for establishing residential districts are thus well summarized in *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N. W. 451, 33 A. L. R. 269:

"* * * they attract a desirable and assure a permanent citizenship; they foster pride in and attachment to the city; they promote happiness and contentment; they stabilize the use and value of property and promote the peace, tranquillity, and good order of the city."

Zoning, however, is not static. It changes with changed conditions and the complexities of a modern age. If the rule were otherwise, there could be no progress. A regulation concerning the use of property might be considered reasonable today whereas, under different conditions, would be deemed so arbitrary and unreasonable as to amount to confiscation. Clearly, a city has the power to amend a zoning ordinance from time to time, if there has been a substantial change of conditions and the amendment has some reasonable relation to the end sought to be attained, viz: furtherance of the public interests. *Village of Euclid v. Ambler Realty Co.,* supra; *Miller v. Board of Public Works* 195 Cal. 477, 234 P. 381, 38 A. L. R. 1479; 138 A. L. R. 500 note. Police power must be exercised to promote the general welfare of the people at large, and not for the interests of any private group. *Kroner v. Portland,* supra; *Berger v. City of Salem,* 131 Or. 674, 284 P. 273; *Phipps v. City of Chicago,* 339 Ill. 315, 171 N. E. 289. Amendments to zoning ordinances should be made with caution and only when changing condi-

tions clearly require amendment. Otherwise, the very purpose of zoning will be destroyed.

■ Property owners have no vested rights by reason of the enactment of an ordinance establishing use districts. No contractual relations are thereby created. Property is held subject to a valid exercise of the police power. We think, however, that a home owner has the right to rely on the rule of law that a classification made by ordinance will not be changed unless the change is required for the public good. *Phipps v. City of Chicago,* supra; *Kennedy v. City of Evanston,* 348 Ill. 426, 181 N. E. 312; *Clifton Hills Realty Company v. City of Cincinnati,* 60 Ohio App. 443, 21 N. E. (2d) 993. Certainly it cannot be made merely to accommodate private interests detrimental to the welfare of other property owners in the same district. As said in *Kennedy v. City of Evanston,* supra, and which we approve:

"If a general zoning ordinance is passed and persons buy property in a certain district, they have a right to rely upon the rule of law that the classification made in the general ordinance will not be changed unless the change is required for the public good."

■■ While the City Council has wide discretion in enacting zoning ordinances, it has no right or authority to place restrictions on one person's property and by mere favor remove such restrictions from another's property. There must be reasonable ground or basis for the discrimination. In *White's appeal,* 85 Pa. Superior Ct. 502, affirmed 287 Pa. 259, 134 A. 409, 53 A. L. R. 1215; *De Blasiis v. Bartell,* 143 Pa. Super. 485, 18 A (2d) 478. Whether there has been such a substantial change of conditions in a use district as to warrant the enactment of an amendatory zoning ordinance is primarily a question for the Council to determine, and its action, in reference thereto, will not be reviewed by

the courts if the question is fairly debatable. It is only when the legislation is clearly arbitrary and unreasonable that a court will interfere. *Zahn v. Board of Public Works,* 274 U. S. 325, 71 L. Ed. 1074, 47 S. Ct. 594; *Euclid v. Ambler,* supra; *Kroner v. City of Portland,* supra; Metzenbaum on Law of Zoning 69.

■ Defendants' contention that there has been a substantial change in the character of the district is based solely upon the increase of traffic at the intersection of 33rd Avenue and Knott Street. 33rd Avenue is a through street and leads directly to the ship yards and a large army air base. Traffic count taken during the war period discloses heavy traffic over such street. There is a red stop flash signal at the intersection. It is a loading place for passenger buses. It is believed, however, that the traffic condition is to some extent due to war activities and therefore is of a temporary nature. Be that as it may, there are many streets in residential districts of the city where traffic is equally heavy, and still many fine homes are maintained. If residential districts can be changed merely on account of increased traffic, there would be no certainty or stability to zoning. We conclude that this evidence in itself affords no reasonable ground for enactment of the amendatory ordinance.

■ It is true that the lots are far more valuable for business than for residential purposes, but that in itself is not a sound reason for permitting the change of use of the property. That the property has great value for business purposes is a matter for consideration but it is not controlling. We must also bear in mind the depreciation in value of other property in the district caused by the removal of the restriction. That Mrs. Hughes may profit at her neighbors' expense does not appeal to equity. A different question would

be presented if the restriction for residential use entirely deprived the owner of any beneficial use of the property. It is an exaggeration to say that these lots can never be used for residential purposes. There are only a few vacant lots in the district—seven of which are owned by the defendant Hughes and are in the same block as the lots in controversy. True, Mrs. Hughes had the right to refuse to sell her property for residential purposes, but if loss is sustained by reason of speculating on the removal of zoning restrictions, she has no just cause to complain.

■ Here, the Council have singled-out these lots in the heart of an exclusive residential district in its prime. The lots—excluding the non-conforming uses above mentioned—are entirely surrounded by the homes of people who desired to get away from the environment of business and industry. If this single intrusion of business is sustained, it will be merely the opening wedge for other commercial interests. It will result in a "commercial island" established in the center of one of the best residential districts in the City of Portland. We fail to see wherein the change has any substantial relation to the public welfare and therefore it is an arbitrary and unreasonable exercise of the police power. To sustain this amendatory ordinance would frustrate and destroy the purpose and plan of the original comprehensive zoning ordinance enacted in 1924, and under whose protection this district has developed.

■ *Leahy v. Inspector of Buildings,* 308 Mass. 128, 31 N. E. (2d) 436, is particularly in point. In that case an amendatory zoning ordinance purported to change a single corner lot from a residential to a business district. The court said the effect of the ordinance "was to single out one lot located in what was essentially a

residential district and to impose restrictions on it that were less onerous than imposed on the remaining portion of what was in reality the same zoning district." It was urged there, as here, that the traffic conditions adjacent to the lot changed the character of the district, but the court refused to sustain the validity of the ordinance. As a general rule, such so-called "spot zoning" is invalid. *Strain v. Mims,* 123 Conn. 275, 193 A. 754; *Michigan-Lake Bldg. Corp. v. Hamilton,* 340 Ill. 284, 172 N. E. 710; *Mueller v. Hoffmeister Undertaking & Livery Co.,* 343 Mo. 430, 121 S. W. (2d) 775; *Linden Methodist Episcopal Church v. Linden,* 113 N. J. L. 188, 173 A. 593; *Higbee v. Chicago B. & Q. R. R. Co.,* 235 Wis. 91, 292 N. W. 320, 128 A. L. R. 734. Also see case in notes 149 A. L. R. 292, 128 A. L. R. 740. In *Higbee v. Chicago,* supra, the court sustained an ordinance permitting a public utility to erect a railway station in a residential district on the ground that it tended to promote the public welfare, but the court significantly said: "Doubtless an attempt to erect a manufacturing plant in a district zoned for and occupied by first-class single residences only might be properly held to be 'spot zoning' and unreasonable and arbitrary." We do not wish to be understood as announcing a hard and fast rule that "spot zoning" is illegal. Obviously, the decision in each case depends upon its own particular facts. There are exceptional cases in which such zoning would be a valid exercise of the police power. *Skalko v. City of Sunnyvale,* 14 Cal. (2d) 213, 93 P. (2d) 93 is illustrative. That case involved property on the perimeter of a residential district. After the district was created, a large cannery was erected across the street. This factory had three thousand employees. Such business encroachment upon the district rendered the prop-

erty of the plaintiff absolutely worthless for residential purposes. The enforcement of restrictions for residential use would, under such circumstances, have deprived the owner of any beneficial use of his property. It would have constituted a taking of his property without due process of law. The court, in the light of these facts, granted relief and held that the zoning ordinance as applied to such property was void. Also to the same effect see *Eggebeen v. Sonnenburg,* 239 Wis. 213, 1 N. W. (2d) 84, 138 A. L. R. 495.

█ The books are replete with decisions concerning various phases of zoning, but there is no question more controversial than those arising out of an invasion of residential districts by commercial enterprises. It is impossible to reconcile the decisions. Courts are agreed, however, that zoning must be based upon a valid exercise of the police power, and whether it has been so exercised is subject of judicial review.

Appellants have cited numerous authorities, and it would greatly extend this opinion to discuss all of them. We will select those cases upon which appellants chiefly rely.

*Arverne Bay Construction Company v. Thatcher,* 278 N. Y. 222, 15 N. E. (2d) 587, 117 A. L. R. 1110, involved the validity of an amendatory ordinance which changed the classification of certain property from an unrestricted to a residential district. The plaintiff claimed that its property could not be profitably used for residential purposes and that the ordinance violated its constitutional rights by taking property without due process of law. It appears that the property in controversy abutted on Linden Boulevard for a distance of four miles, with the exception of a small section at a railroad crossing, and that it was located in an undeveloped district. As stated by the

court, there had been no building construction in that area for many years prior to the amendment. In the vicinity of plaintiff's property, the city permitted an incinerator which gave off offensive fumes and odors. About 1200 feet from the plaintiff's land there was a trunk sewer carrying both storm and sanitary sewage which emptied into an open creek. Under these facts, it is plain that plaintiff's property could not be reasonably adapted for residential use. The court properly declared the ordinance under such circumstances to be an unreasonable restriction upon the use of property and therefore void. Just what application this case has to the one under consideration is difficult to understand.

*Avery v. Village of La Grange,* decided in 1943, 381 Ill. 432, 45 N. E. (2d) 647, is not, in our opinion, contrary to the previous decisions of *Phipps v. City of Chicago,* supra, and *Kennedy v. City of Evanston,* supra, decided by the Supreme Court of Illinois. In the Avery case, the court up-held the action of the City Council in amending the zoning ordinance to permit the property in question to be used for a two-family dwelling instead of a single-family dwelling as provided in the original ordinance. The question was fairly debatable and therefore the court refused to review the same. In that case, the evidence disclosed that the property in controversy was surrounded by property which had been re-zoned as a class B district, permitting the use of multiple dwellings. In the instant case, eliminating the non-conforming use, the lots of the defendant, Hughes, are surrounded by residential properties.

*Chayt v. Maryland Jockey Club,* 179 Md. 390, 18 A. (2d) 856, is also relied upon by defendant-appellants, but we are not impressed by it. In that case, the

Chayts owned and occupied a home near the race track of the Maryland Jockey Club. Contiguous to the race track were several lots, also owned by the Jockey Club and which had been acquired by it at a time when no zoning restrictions were imposed. The lots were used only as a parking ground for automobiles. In 1938, the Jockey Club applied for a permit to construct a stable on the lots. Chayt filed suit to enjoin the granting of the application on the ground that the property was zoned as a residential district, and the court restrained the issuance of the permit. (*Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A. (2d) 747.) In the meantime, an ordinance was passed reclassifying the property from residential to a "first commercial use district". The validity of the ordinance was challenged on the ground that it provided for "spot" zoning, but the court did not pass on such question since it treated the property "as if it had originally been classified as a first commercial use district". The court, in refusing to enjoin enforcement of the last above mentioned ordinance, based its decision on the proposition that, since the amendatory ordinance put the properties in a lower classification, the Chayts had not been injured. The court, in our opinion, failed to apply the well established principle that the validity of the amendatory ordinance depended on whether it tended to promote the general welfare. We think the protection of the American home is more important than that the "races must go on".

Having concluded that the evidence in this case discloses no reasonable ground for the exercise of the police power in enacting an amendatory ordinance, and that it has no substantial relation to the public welfare, it follows that the decree of the circuit court is affirmed. Plaintiffs are entitled to their costs and disbursements.