Hekbert, J.
Although many errors are assigned herein by each party to this appeal, all of which will be considered herein, the ultimate question presented is whether the judgment of the Court of Appeals which holds “unconstitutional, null and void” the amendments to the original comprehensive zoning ordinance of November 5, 1929, so far as they purport to restrict the improvement, use and enjoyment of the properties of the appellees which had been substantially improved prior to the effective date of the first amendatory ordinance, is erroneous.
The plaintiff appellee and cross-appellant and the defendant appellees and cross-appellants have joined in their cross-appeals and list their assignments of error together. For the purpose of this opinion, they will therefore be referred to as appellees, unless individual reference is indicated. The city of Cleveland is the appellant here.
The assignments of error of the appellant city of Cleveland complain that the Court of Appeals deprived the city of the exercise of its power of local self-government to amend, by ordinance, its comprehensive zoning ordinance, when the ordinance as amended makes an established retail business a “nonconforming use”; and that the court erred in holding that (1) the amendatory ordinances are unconstitutional and inoperative as to certain retail businesses because the ordinances deny *515 the occupants the right to make a future addition, extension or substitution of business use, (2) the owners of such premises were entitled to rely upon the continuance of the comprehensive zoning ordinance without amendments materially increasing the restrictions upon the use of their property, (3) the amendatory ordinances which changed the zoning from “retail business” to “multi-family” zoning are unconstitutional and inoperative upon those lands acquired and improved for “retail business” purposes in reliance on and in conformity with the original comprehensive zoning ordinance, (4) the ordinances are unconstitutional and inoperative to the extent that they apply to premises substantially improved for business purposes, for the reason that the amendments caused said premises to be subject to certain limiting provisions relating to repair, replacement or abandonment of the use of nonconforming properties, and (5) the amended ordinance constitutes an unconstitutional taking of property, without due process of law, because it exposes established retail businesses to the hazards of destruction by depriving the owners of the rights of modernization, repair and upkeep.
The city also assigns as error the action of the Court of Appeals in holding the amended ordinance unconstitutional and inoperative as to certain retail businesses, while finding the ordinance valid as to vacant lands and lands used for residence purposes; and also the refusal of the Court of Appeals to render judgment in favor of the city against cross-petitioning defendants who failed to offer evidence in support of the allegations in their cross-petitions. The city further claims that the judgment of the Court of Appeals is contrary to law and contrary to the weight and sufficiency of the evidence.
Appellees contend that the findings of fact are incorrect and inconsistent. They also contend that such findings are incomplete because of the failure of the Court of Appeals to make findings as to all properties located in the pertinent portion of Lake Shore Boulevard.
Their claims of error in regard to the conclusions of law are consistent with their objections raised to the findings of fact, in that they claim the Court of Appeals erred in failing to find the amendatory ordinances unconstitutional and void *516 as to all properties located in the pertinent portion of Lake Shore Boulevard, whether improved or unimproved. The ap-pellees also claim that those who had expended capital in acquiring or substantially improving lands on Lake Shore Boulevard have the right to rely on the original zoning ordinance.
The claimed errors in the judgment are set forth as being the failure of the Court of Appeals to hold the amended ordinance unconstitutional and void as to all properties in the pertinent portion of Lake Shore Boulevard, and the failure of the court to give relief to all parties active in the case, whether the land was improved, and by whomsoever owned.
Finally, the appellees contend that the “separate findings of fact and conclusions of law” and also the journal entry, judgment, decree and order of the Court of Appeals are permeated with two basic erroneous concepts prejudicial to them, namely, that the amendatory ordinances were and are confiscatory only of improved properties, that only persons who had improved their properties were entitled to rely upon the zoning as it existed when they invested their capital, and that the court lacked jurisdiction to adjudicate the constitutionality of the amendatory ordinances in their application to property of persons not parties to the case and actively participating in it.
We have examined the record with respect to these contentions of the appellees, including the claimed errors of omission, and hold the view that appellees’ assignments of error are without substantial merit, as will be developed further in this opinion.
The gist of the errors claimed by the city is that the judgment of the Court of Appeals is erroneous when it held the amendatory ordinances which changed the zoning from “retail business” to “multi-family” are unconstitutional and inoperative upon those lands acquired and substantially improved for “retail business” purposes in reliance on and in conformity with the original comprehensive zoning ordinance (1929).
Assignments of error 3 and 4 of the city of Cleveland are as follows: *517 April 15, 1945, and thereafter, is unconstitutional or inoperative as to certain retail businesses made lawful nonconforming uses, for the reason that the owners of such premises were entitled to rely upon the continuance of the ordinance without amendments materially increasing the restrictions upon the use of their property.
*516 “The Court of Appeals erred by holding that the comprehensive zoning ordinance of the city of Cleveland, as amended
*517 “The Court of Appeals erred by determining that the building zone maps of the city of Cleveland, as amended in 1945, which changed the zoning from retail business zoning to multi-family zoning, were unconstitutional and inoperative upon those lands acquired and improved for retail business purposes in reliance upon and in conformity with the provisions of the comprehensive zoning ordinance prior to its amendment April 15, 1945.” (Emphasis added.)
With these claims of error in mind, let us examine the findings of fact and conclusions of law as set out by the Court of Appeals.
Finding of fact 16 states:
“ * * * that said John Pretz has purchased all of said real estate after the same had been zoned for retail business use by the zoning ordinance of 1929, and in reliance upon said zoning, that he had leased said real estate to the defendant, The Manners Company * * (Emphasis added.)
The finding further recites the contractual relationships between Pretz and The Manners Company and the entering into of a new lease agreement on May 15, 1954, after the lessee had notified the lessors “that the lease would be terminated on the 14th day of May, 1954, because of the unfair zoning situation and the consistent peril in which the business was being operated because of the danger of 50 per cent destruction eliminating the property from business use.” The finding further recites provisions as to four successive optional renewal periods of five years each.
Finding of fact 24 reads in part as follows:
“Relying upon the provisions of said original zoning ordinance the plaintiff and the various appellees mentioned in paragraphs 11 to 21, inclusive hereof, prior to April 15, 1945, purchased or leased the various parcels of land acquired and owned by them, as hereinbefore found, and, as and to the extent here- *518 inbefore found, erected buildings upon tbeir several parcels suitable for the operation of one or more of the various types of retail business permitted under said original zoning ordinance then in full force and effect, all in reliance upon the provisions of said original ordinance and the expectation that so far as it controlled and permitted the improvement and use of their said property for retail business purposes, would not be repealed or materially changed in the absence of compelling necessity.” (Emphasis added.)
.Finding of fact 27 reads in part as follows:
“The enactment of said amendatory ordinances No. 1159-A-44, effective April 15, 1945, affecting the properties along the pertinent portion of Lake Shore Boulevard that have been and are now substantially improved for use for retail business purposes, have materially impaired and are materially impairing and are substantially destructive of the values of such properties and as to the same, are unreasonable, arbitrary, capricious and confiscatory and are without substantial relation to the public health, safety, morals and general welfare. ’ ’
The parcels so improved are then listed and identified.
Conclusion of law No. 2 is set forth in full as follows:
“Those who had expended capital in acquiring and substantially improving lands fronting on Lake Shore Boulevard at and between the intersections therewith of Nottingham and Neff Roads, for retail purposes, in reliance upon and in conformity ivith the provisions of the zoning ordinance in force prior to April 15, 1945, ivere, because of the circumstances and conditions created and now existing on Lake Shore Boulevard at and between the aforementioned intersections, by reason of such improvements, entitled to rely upon the continuance of such ordinance without amendments materially increasing restrictions upon the use of their property. Because of the circumstances and conditions existing by reason of and the extent of said improvements, all such persons, their heirs, legal representatives and assigns do and shall have full and lawful right and power to possess, use and enjoy their said lands and property in any manner and for all purposes that were lawful under the provisions of said zoning ordinance as the same are in force prior to the enactment of the said amendatory ordinance effective April 15,1945.” (Emphasis added.)
*519 Counsel for the city in claiming that the Court of Appeals adopted what they term the “contract theory of zoning” cite in opposition to such a principle the cases of Pritz v. Messer, 112 Ohio St., 628, 149 N. E., 30; Davis v. Miller, 163 Ohio St., 91, 126 N. E. (2d), 49; State, ex rel. Jack, v. Russell, Bldg. Commr., 162 Ohio St., 281, 123 N. E. (2d), 261; and City of Akron v. Chapman, 160 Ohio St., 382, 116 N. E. (2d), 697, 42 A. L. B. (2d), 1140.
We find no reference in any of those cases to the so-called ‘ ‘ contract, ’ ’ or what might also be termed ‘ ‘ reliance, ’ ’ theory.
It is quite apparent, however, from the conclusion quoted above that the Court of Appeals was following the theory, advanced in the plaintiff’s petition,' that one who acquires and improves property has a right to rely on the zoning regulations effective thereon at the time of improvement, even to the point that such regulations “would not be repealed or materially changed in the absence of compelling necessity.”
The Court of Appeals in its journal entry incorporated by reference its separate findings of fact so that such findings must be considered as if fully restated in the judgment entry. It may, therefore, be fairly summarized that the Court of Appeals found that the amendatory ordinances have materially impaired and are substantially destructive of the values of the specified properties on the pertinent portion of Lake Shore Boulevard that have been substantially improved for use for retail business purposes and as to such properties are unreasonable, arbitrary, capricious and confiscatory and without substantial relation to the public health, safety, morals and general welfare; and that those who had expended capital in acquiring and substantially improving such lands for retail business purposes in reliance upon and in conformity with the provisions of the zoning ordinance as in effect prior to April 15,1945, were because of the circumstances and conditions created and existing by reason of such improvements entitled to rely on the continuance of such ordinance without amendments materially increasing restrictions upon the use of their property.
We find no Ohio authority for this view and consider it to be contrary to the prevailing rule. The following quotation from 8 McQuillin on Municipal Corporations (3 Ed.), 164, Section 25.95, is pertinent:
*520 “Fundamentally, there can be no vested or contract rights against rezoning or an extension of a district, since zoning constitutes a governmental, legislative and discretionary power. This is, of course, true of all police powers. An exercise of the zoning power, like that of any other governmental or police power, cannot in itself create contractual relations that are not subject to subsequent change by a proper exercise of the same power. Consequently, there is no right to compensation either for a taking or diminution in the value of or damage to property arising either from original zoning or from a rezoning or extension of a use district.”
The right of the owner of land to rely on a zoning ordinance in effect at the time of the purchase or improvement of land has been considered in other fairly recent cases.
The case of Rodgers v. Village of Tarrytown (1951), 302 N. Y., 115, 96 N. E. (2d), 731, was an action for a declaratory judgment in which it was contended that the ordinances of the village establishing a new residence zone were invalid. The original ordinance had been in effect for several years. The court there held:
“While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it.”
See, also, Offutt v. Board of Zoning Appeals of Baltimore County (1951), 204 Md., 551, 105 A. (2d), 219, wherein it was stated:
“We acknowledge that a property owner has the right *521 to rely upon the rule of law that a classification made by an ordinance will not he changed unless the change is required for the public good. Clifton Hills Realty Co. v. City of Cincinnati, 60 Ohio App., 443, 21 N. E. (2d), 993; Kennedy v. City of Evanston, 348 Ill., 426, 181 N. E., 312; Page v. City of Portland, 178 Ore., 632, 165 P. (2d), 280. However, property owners have no vested rights in consequence of the enactment of a zoning ordinance establishing use districts. No contractual relations are created thereby. Property is held subject to the valid exercise of the police power of the state.”
Also in Morgan v. Thomas (1951), 207 Ga., 660, 63 S. E. (2d), 659, the court said:
“In the passage of the resolution where the properties of the plaintiffs and the defendants were classified for use as an agricultural residential district, the board did so under the police power, and neither of the parties, as property owners, obtained any vested right or interest that prohibited the board from subsequently changing the zoning classification to a different use. The zoning statute expressly authorizes the Board of Commissioners to amend, change, alter, or modify the comprehensive zoning plan. The action of the board in changing the use classification of the defendants’ property from an agricultural use to that of apartment use does not deny the plaintiffs the equal protection of law, nor operate retroactively in violation of the federal and state constitutional provisions prohibiting the passage of ex post facto laws. Nor does such action deny the plaintiffs equal protection of law in violation of the Fourteenth Amendment to the United States Constitution.”
In the case of Nectow v. City of Cambridge, 277 U. S., 183, 72 L. Ed., 842, 48 S. Ct., 447, the United States Supreme Court held:
“The inclusion of private land in a residential district under a zoning ordinance, with resulting inhibition of its use for business and industrial buildings to the serious damage of the owner, violates the Fourteenth Amendment if the health, safety, convenience or general welfare of the part of the city affected will not be promoted thereby.”
Mr. Justice Sutherland, in his opinion, stated:
“We quite agree with the opinion expressed below'that a *522 court should not set aside the determination of public officers in such a matter unless it is clear that their action ‘has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.’ Euclid v. Ambler Co., supra, p. 395 [272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R. 1016],
“* * * The boundary line of the residential district before reaching the locus runs for some distance along the streets, and to exclude the locus from the residential district requires only that such line shall be continued 100 feet further along Henry Street and thence south along Brookline Street. There does not appear to be any reason why this should not be done. Nevertheless, if that were all, we should not be warranted in substituting our judgment for that of the zoning authorities primarily charged with the duty and responsibility of determining the question. Zahn v. Bd. of Public Works, 274 U. S., 325, 328, and cases cited. But that is not all. The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare. Euclid v. Ambler Co., supra, p. 395. Here, the express finding of the master, already quoted, confirmed by the court below, is that the health, safety, convenience and general welfare of the inhabitants of the part of the city affected will not be promoted by the disposition made by the ordinance of the locus in question. This finding of the master, after a hearing and an inspection of the entire area affected, supported, as we think it is, by other findings of fact, is determinative of the case.”
The case of Smith v. Juillerat, 161 Ohio St., 424, 119 N. E. (2d), 611, concerned the right of mine owners to strip-mine coal on land which they had leased prior to the enactment of a zoning regulation. Paragraphs three and four of the syllabus in that case read:
“3. Where a zoning ordinance is general in its application, the classifications as to uses to which the property may be devoted are reasonable, and pre-existing vested rights are recog *523 nized and protected, the ordinance is a valid exercise of the police power.
“4. Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.”
In the case of State, ex rel. City Ice & Fuel Co., v. Stegner, Dir., 120 Ohio St., 418, 166 N. E., 226, 64 A. L. R., 916, the syllabus reads:
“The provision of a zoning ordinance, limiting the subsequent addition, extension or substitution of business buildings or the use thereof, existing in a residence district at the time of the enactment of such ordinance, where it does not appear that such restrictions have no real or substantial relation to the public health, safety, morals or general welfare, is a valid exercise of the police power and is not violative of either the state or federal Constitution.”
In that case a petition in mandamus was filed to compel the issuance of a permit for the erection of an addition to the relator’s building used as an ice storage plant and for the installation of machinery and equipment necessary to manufacture ice for commercial use. The building on relator’s premises was erected in 1923 and was used for the exclusive purpose of storing ice. In a zoning ordinance subsequently adopted, the premises were designated as a business “A” district. In 1927, the zoning was changed and the district classified as a residence “B” district. Pertinent to the facts here, there appears in the opinion by Matthias, J., the following:
“The case of American Wood Products Co. v. City of Minneapolis (D. C.), 21 F. (2d), 440, involved the validity of the provisions of a zoning ordinance, which, while not prohibiting the existing use of a factory in a district zoned as a dwelling district, did prohibit the use of any unimproved property for the purpose of building other factory buildings or additions to factories then existing. The case referred to was a consolidation of four separate actions involving substantially the same question. In each of them it appeared, just as it is claimed in *524 the instant case, that the property of the relator was far more valuable for industrial than for residence purposes, and therefore that the effect of the ordinance is to seriously depreciate the value of the relator’s property. It was asserted there, as here, that the effect of the enforcement of such ordinance is to deprive the owners of their property without due process of law, and that it constitutes a taking of property for public purposes without just compensation. Indeed that has been the basis of attack upon zoning legislation generally, but it has been disposed of in the cases above referred to and in many other cases therein cited. ’ ’
In City of Akron v. Chapman, supra (160 Ohio St., 382), this court had under consideration an appeal from the Court of Appeals for Summit County involving the zoning ordinance of the city of Akron and its application to the use of certain property as a junk yard. This court unanimously held in paragraph one of the syllabus as follows:
“A comprehensive zoning ordinance is a valid exercise of the police power, where such ordinance limits the future expansion of a lawful business conducted on property in a zoned area and which was in existence at the time of the passage of such zoning ordinance, or which ordinance limits the future addition, extension or substitution of buildings in which such business was being conducted at the time of the passage of such ordinance, and which ordinance has a substantial relationship to the public health, safety, morals or general welfare.”
In the light of the foregoing holdings, we return to consideration of the judgment of the Court of Appeals in this case.
The findings of fact state that each of the appellees purchased or leased the specified parcels of land involved or erected buildings thereon, relying on the provisions of the original ordinance, and in the conclusions of law a statement is again made that as to those who expended capital and acquired substantially improved lands “in reliance upon” the ordinance were entitled to rely on the continuance of the ordinance. The evidence recited in the findings of fact relates to anticipated or actual decrease in valuation by reason of the amendments to the original zoning ordinance.
It Avould appear that the claimed right of the property *525 owners to rely upon the zoning ordinance of 1929 was considered of compelling importance by the Court of Appeals in testing the constitutionality of the amendatory ordinances of 1945 and 1949. With that view we do not agree.
Appellees’ reliance on the original comprehensive zoning ordinance is not sufficient to prevent a rezoning. Neither is the power of a municipality to enact amendatory zoning ordinances limited by the value or the extent of the improvements affected, particularly when nonconforming uses are protected. Certainly no property owner has a vested right to have the zoning classification which is in effect when he acquires or improves real estate to remain unchanged. Where, as in this case, the rights of the property owners to continue their present use indefinitely are preserved and where provision is made for administrative appeal for relief in individual cases, the ordinance cannot readily be considered arbitrary or confiscatory.
It should be noted that the 1945 ordinance applied only to the “pertinent portion” of Lake Shore Boulevard and was repealed but substantially re-enacted by the 1949 ordinance effective January 1950. The 1949 ordinance, however, is a comprehensive amendatory ordinance general in its application throughout the city, reclassifying this area from a “C-residence” to a “multi-family” district. It was in the 1949 ordinance that Sections 981-29, 981-31 and 981-32 (now codified as Sections 5.1132, 5.1134 and 5.1135) were adopted. These specified sections are therefore generally applicable to nonconforming uses throughout the city of Cleveland.
We are constrained to the conclusion, therefore, that the judgment of the Court of Appeals that these amendatory ordinances are unconstitutional and void as to the appellees for the reason that such appellees had a right to rely on the original zoning ordinance is erroneous. Actual or potential losses in value resulting from the rezoning of substantially improved lands do not render an amendatory zoning ordinance invalid unless when applied to the owners thereof such ordinance is found to be unreasonable and discriminatory and without relation to the public health, safety, morals or general welfare.
Coming again to the assignments of error of the appellees, they lay great stress on their contentions that the Court of Ap *526 peals erred in failing to liold the amendatory ordinances invalid as to all the property located in the pertinent portion of Lake Shore Boulevard. That court found that “as to the vacant land and the land upon which only temporary commercial buildings have been erected in the territory involved, the comprehensive zoning ordinance, as amended, has not destroyed the greater part of the value of these lands and is not confiscatory in nature.” We are in accord with that finding.
In Davis v. Miller, supra (163 Ohio St., 91), the appellant owned property on both sides of U. S. Highway 33 in Perry Township, Franklin County, and had leased the land lying west of the highway for quarrying stone. The quarrying operation had been conducted for a number of years. About a year and a half before the adoption of a county zoning resolution by the people of Perry Township, the appellant leased the acreage lying east of the highway for the same purpose and, following the effective date, sought a nonconforming use registration covering the lands on both sides of the highway, which was refused. The syllabus in that case is:
“1. Zoning legislation constitutes a deprivation for the public good of certain uses by the owners of property to which their property might otherwise be put, and such legislation should be given a fair and reasonable construction with due regard for the conflicting interests involved.
“2. Where it is found that land owned by a person and bisected by a public highway comprises two separate and distinct parcels, one of which was used for the quarrying and crushing of stone before the enactment of a county zoning resolution prohibiting such activity, a determination that the other parcel, after the enactment of such zoning resolution, may not be devoted to such prohibited use is justified and proper. ’ ’
Five members of the court concurred in the opinion of Zimmerman, J., while Taft, J., concurred in paragraph two of the syllabus and in the judgment.
Paragraph two of the syllabus in the case of State, ex rel. Jack, v. Russell, supra (162 Ohio St., 281), is also pertinent. In the opinion in that case, Stewart, J., said:
“All that appears is that the plaintiff could sell his property more advantageously (how much more does not appear) *527 if he could divide it. A large proportion of the owners of land and buildings affected by zoning ordinances could say with equal truth that their lands would he more saleable if there were no such zoning ordinances.”
The applicability of provisions of zoning regulations to vacant lands has been considered in other jurisdictions.
In Garrou v. Teaneck Try on Co., 11 N. J., 294, 35 A. L. R. (2d), 1125, 94 A. (2d), 332, the defendants owned a tract of land composed of six lots, five within a business zone and the sixth within a residential zone. The plaintiff, owning a home adjoining the sixth lot, was held entitled to relief to prevent defendants from utilizing the sixth lot as a parking facility in connection with a shopping center built on the tract.
In the case of Lutz v. New Albany City Plan Commission, 230 Ind., 74, 101 N. E. (2d), 187, the Supreme Court of Indiana had before it these facts:
In July 1946, owners of certain property in New Albany gave an option to the Texas Company to purchase property with the reservation to remove the buildings thereon within six months after the exercise of the option, after which the Texas Company assigned the option. The assignee entered into a lease agreement with the Texas Company by the terms of which he as lessor agreed to construct a gasoline service station on the property. Upon exercise of the option the property was conveyed to the assignee in November 1946. On February 1, 1947, the buildings were removed and on February 27, 1947, a zoning ordinance became effective which placed the property in a class which permitted residences and apartment houses, but did not permit the erection of gasoline service stations. The zoning ordinance provided for the continuance of nonconforming uses then existing. It was held that the property was not exempted from the operation of the zoning ordinance upon the ground that it had been purchased and plans made for the erection of the building before the adoption of the ordinance.
In Mayor and City Council of Baltimore v. Shapiro, 187 Md., 623, 51 A. (2d), 273, the plaintiff’s right to the use of a vacant lot for the dismantling and salvaging of automobile parts was denied. The Court of Appeals of Maryland in reversing the judgment of the lower court held:
*528 “In view of our conclusion that the use was not established or existing in 1941, it is unnecessary to consider the question as to whether it was subsequently abandoned.”
In Martin, Bldg. Inspector, v. Cestone, 33 N. J. Sup., 267, 110 A. (2d), 54, an owner of four adjacent lots was denied the extension of a nonconforming use of one lot to the other three vacant lots.
See, also, Page v. City of Portland, 178 Ore., 632, 165 P. (2d), 280; Spencer v. Board of Zoning Appeals, 141 Conn., 155, 104 A. (2d), 373; Chayt v. Board of Zoning Appeals, 177 Md., 426, 9 A. (2d), 747.
In accord with this court’s decision in the Davis case, supra, and the prevailing view in other jurisdictions, as indicated in the above-cited authorities, we conclude that, upon the record before us, the appellees’ contentions as to vacant land and the land upon which only temporary commercial buildings have been erected in the territory involved are not well taken, and we sustain the Court of Appeals in its finding with respect to those properties.
This rule as to the general applicability of the amendatory ordinances is entirely reasonable when it is taken into consideration that section 981-63 of the 1949 ordinance (codified as section 5.1166) reads in part as follows:
“Paragraph (c) 1. Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of this chapter, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this chapter so that public health, safety, morals and general welfare may be safeguarded and substantial justice done.
“2. Limitation of Variance Powers. Such variance shall be limited to specific cases where:
i i *
“2b. Refusal of the variance appealed for will deprive the owner of substantial property rights * *
See L. & M. Investment Co. v. Cutler, 125 Ohio St., 12, 180 N. E., 379, 86 A. L. R., 707.
Also, we find no error in the ruling of the Court of Appeals *529 as to the application of the amendatory ordinances to property of persons not parties to the suit and not actively participating in it.
Since, however, the Court of Appeals as shown herein found as a matter of law that those, who had expended capital in acquiring and substantially improving lands for ‘ ‘ retail business ’ ’ in reliance upon and in conformity with the zoning ordinance in effect prior to these amendatory ordinances, were, because of the circumstances and conditions created at the affected locations by reason of such improvements, entitled to rely upon the continuance of such prior ordinance without amendments materially increasing restrictions upon the use of their property, and entered its judgment accordingly, the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

Judgment reversed and cause remanded.

WeygaNdt, C. J., ZimmermaN, Stewart, Taet and Matthias, JJ., concur.
Bell, J., not participating.