George T. Vandermeulen,
Off. Ref. On May 10, 1958 a petition was filed by and on behalf of the defendants Blanche E. Woelfle and Michael Woloszyn requesting a rezoning of the property hereinafter described from a residential area to a commercial area.
On June 17,1958 at a regular meeting of the Common Council of the City of Dunkirk, the following resolution was unanimously adopted:
‘ ‘ By Councilman Murray:
*958 “ Resolved : The Zoning Ordinance of the City of Dunkirk be and it is hereby amended to rezone as a commercial district the lands described as follows:
“ Beginning at a point on the southerly line of East Fifth Street, which point is 206 feet easterly from the intersection of the southerly line of East Fifth Street and the easterly line of Central Avenue; thence westerly along the southerly line of East Fifth Street 206 feet to the easterly line of Central Avenue, thence southerly along the easterly line of Central Avenue 205 feet to a point; thence easterly parallel to East Fifth Street, 180 feet to a point; thence northerly parallel to Central Avenue, 135 feet to a point; thence easterly parallel to East Fifth Street, 26 feet to a point and thence northerly parallel to Central Avenue, 150 feet to the point or place of beginning.
“Carried, all voting aye.”
The hereinbefore described premises is located in block 518, and the plaintiffs ’ own residences are on Central Avenue which at all times have been in a residential zone.
On April 5, 1955, after a public hearing upon the application of Blanche E. Woelfle to rezone a strip along Central Avenue which included the property now in question from residential to commercial, the Council previously voted to deny the same.
Previous to the action taken by the Common Council on June 17, 1958, at a regular meeting of the Zoning Board of Appeals held May 27, 1958, a resolution was unanimously adopted declaring the objection of said board to the zoning of said premises.
The plaintiffs duly filed a notice of appeal from the determination of the Common Council.
It was stipulated at the trial that the Official Referee might view the premises, which I did.
The plaintiffs claim the action of the Common Council is “ Spot Zoning ” and therefore illegal.
In Rodgers v. Village of Tarrytown (302 N. Y. 115, 123) the court defined the charge of illegal spot zoning as the process of “ singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners ’ ’ (citing numerous cases). This definition appears to have been followed in a number of cases subsequently. In Cassel v. Mayor of Baltimore (195 Md. 348) the Court of Appeals of Maryland said (p. 355): “ ‘ Spot zoning,’ the arbitrary and unreasonable devotion of a small area within a zoning district to a use which is inconsistent with the use to which the rest of the *959 district is restricted, has appeared in many cities in America as the result of pressure put upon councilmen to pass amendments to zoning ordinances solely for the benefit of private interests. While the City Council has wide discretion in enacting zoning ordinances, it has no authority to place restrictions on one person’s property and by mere favor remove such restrictions from another’s property, unless there is reasonable ground for the discrimination. Moreover, increase in ‘ spot zoning ’ in course of time would subvert the original soundness of the comprehensive plan and tend to produce conditions almost as chaotic as existed before zoning. It is, therefore, universally held that a spot zoning ’ ordinance which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain. Leahy v. Inspector of Buildings of City of Bedford, 308 Mass. 128, 31 N. E. 2d 436; Jersey Triangle Corporation v. Board of Adjustment, 127 N. J. L. 194, 21 A. 2d 845; Polk v. Axton, 306 Ky. 498, 208, S. W. 2d 497; Page v. City of Portland, 178 Or. 632, 165 P. 2d 280.”
One of the arguments advanced by the defendants is the fact that Central Avenue is the main connecting highway between Dunkirk and Fredonia and that this route is used by truck lines and the traffic conditions justify the Common Council in acting as they did. How would the singling out of this small area remedy the traffic situation? Central Avenue, according to the testimony, is a four-lane highway. If the Council desired to provide more space for moving vehicles, it could easily confine parking to one side of the street.
It was said in Freeman v. City of Yonkers (205 Misc. 947, 956): “In any event, it is clear that, as a general proposition, a local legislative body does not have the power to rezone property along a main artery of travel, lot by lot at a time. Such would be piecemeal zoning, which is generally prohibited. Furthermore, it is generally held that restrictions should not be lowered on residential property merely because it abuts on a heavily travelled street. ‘ If residential districts can be changed merely on account of increased traffic, there would be no certainty or stability to zoning’” (citing Page v. City of Portland, 178 Ore. 632, 640).
Another contention is lack of parking space in Dunkirk. How would the rezoning of this small area remedy the parking sitúa *960 tion! Furthermore, if more parking space is necessary, the City of Dunkirk has the power of condemnation and under that power, adequate parking facilities could be made possible in various parts of the city and revenue derived therefrom. It wouldn’t be necessary to single out this small parcel for that purpose.
Another reason advanced is that additional revenue would enure to the benefit of the city because business properties would be assessed more than the present residences. That in my judgment is no reason for changing this small area from residential to commercial. The defendants haven’t submitted a single case to support this claim, nor have I been able to find a single authority anywhere in support thereof.
Another argument is that for the good and welfare of the people the projection of business would have to go south in Dunkirk. From the evidence and from my observation, no one can predict in which direction business is going. It is pure speculation. Again, I say, how does the choosing of a small parcel of land out of a number of parcels in the block on Central Avenue justify this claim?
It was said in Freeman v. City of Yonkers (205 Misc. 947, 95A-955, supra). “ The ultimate question, therefore, is not whether or not there was benefit to the owners of the rezoned property and detriment to neighboring property owners, but whether or not the intent and effect of the legislation was to arbitrarily discriminate rather than to promote the public welfare. If such was the intent and effect of the legislation, the act is an arbitrary and improper exercise of legislative power, in that it offends against the due process and equal protection clauses of the Constitutions, and is not justified in the exercise of the police power. It is fundamental that valid zoning legislation must find its justification in the exercise of the police power in the interests of the public. (See Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196.) Where particular zoning legislation does not promote health, safety, morals or general welfare of the community, it may not be justified as a valid exercise of the police power and is invalid. Whether a zoning regulation is reasonable and conducive to the public health, safety, morals or general welfare so as to be a proper exercise of the police power is a question of fact.” (Hudson v. Town of Oyster Bay, 248 App. Div. 737.)
In Chapman v. City of Troy (241 Ala. 637, 639-640) the court said: “ A single ordinance laying off a small portion of the city as a residence district, taking no account of other areas equally residential in character; and so far as appears without *961 any comprehensive plan with a view to the general welfare of the inhabitants of the city as a whole, is not permissible. Piecemeal ordinances are not favored. ’ ’ (See, also, Kuehne v. Town Council of East Hartford, 136 Conn. 452; Bartram v. Zoning Comm. of City of Bridgeport, 136 Conn. 89.)
No words of mine could more clearly and adequately express my opinion than what was stated in Church v. Town of Islip (6 Misc 2d 810). In that case the court said (p. 813): “ No public need or convenience has been indicated, and the conclusion is inevitable that the action of the town board, in granting the Housler zoning application, was capricious and arbitrary and not in compliance with the public convenience or any system of orderly planning or any consideration of the needs of the community. From all of the evidence in this case it is clear that the plaintiffs are aggrieved persons who have proper standing to maintain this action. The granting of the application was clearly ‘ spot zoning ’ and was not part of any comprehensive plan of orderly zoning and, assuredly, does not promote the general welfare of the community, but was exclusively for the benefit of the individual owners of the rezoned property. (Freeman v. City of Yonkers, 205 Misc. 947; Deligtisch v. Town of Greenburgh, 135 N. Y. S. 2d 220.) ”
Therefore, I hold the action of the Common Council of the City of Dunkirk on the 17th day of June null and void.
Judgment may be entered accordingly.